**NORTHERN INS. CO. OF NEW YORK**

**v.**

**FISCHER.**

**STANDARD INS. CO. OF NEW YORK**

**v.**

**FISCHER.**

**NATIONAL FIRE INS. CO. OF HARTFORD**

**v.**

**FISCHER.**

Nos. 1431–1433.

Municipal Court of Appeals for the District of Columbia.

Argued Feb. 24, 1954.

Decided March 24, 1954.

Albert F. Beasley, Washington, D. C., for appellants.

Milton M. Burke, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

In three consolidated cases verdicts were directed and judgments entered in favor of a plaintiff who had sued for loss by fire under policies issued by three coinsuring companies. The subject matter was the stock and fixtures in a shoe store, and it was agreed that the recoverable loss, if plaintiff was entitled to prevail, would be $5,339.43, to be paid by the three insurers according to the extent of the respective policies.

Defendants denied that plaintiff had any interest in the store or the property damaged in the fire, and charged that he was merely a "front man" for one David Milloff, his brother-in-law, who was the real owner of the business. They also charged that under a clause in the policies plaintiff had forfeited his right to recover because he was guilty of "false swearing" in connection with his claim. In addition, they questioned the bona fides of the fire.

David Milloff at one time unsuccessfully operated a shoe store at the same premises which are owned by his brother, Simon Milloff. Plaintiff Robert Fischer has two sisters, one of whom is the wife of David Milloff and the other is a Mrs. Helen Sauber. In November 1949 Mrs. Sauber was separated from her husband and living with Mr. and Mrs. David Milloff, and at that time agreed to rent the premises from Simon Milloff and reopen a shoe business there under the name of "Helen's Shoe Store." However, in about two weeks, and before this project got under way, she became reconciled to her husband and arranged to return to Baltimore with him. Seeking a means of disposing of the business she said she "naturally" thought of her brother, Robert Fischer. Robert was then an eighteen-year-old high school boy making his home with his parents in Baltimore. She said she knew Robert had about $200 of his own money. Under their agreement Robert was to pay his sister $1,200 and assume about $1,300 of her debts. They both testified that he paid her $200 in cash and gave her notes for the $1,000 balance. The matter of these notes became the subject of serious dispute by defendants, as we shall see presently. Even more seriously contested was the claim of Robert Fischer that the business was his and was being operated for him by his brother-in-law, David Milloff.

For reasons about to be stated, we must decide that the case should have been submitted for jury decision. We think that in plaintiff's own case there were such elements of inconsistency, inherent improbability and self-contradiction as to authorize a jury to find that the business did not belong to plaintiff Robert Fischer, but to his brother-in-law, David Milloff. In addition, there was in defendants' case substantial evidentiary challenge and contradiction of plaintiff's position.

Without attempting a detailed analysis of the testimony, we refer to some of the disputed features in the evidence which required submission of the case to the jury: (1) the close relationship of Helen Sauber, Robert Fischer and David Milloff; (2) the extreme youth of Robert Fischer; (3) the fact that Robert Fischer was still in high school, living with his parents in Baltimore, and yet claimed to have assumed absentee ownership of a newly reopened business in this city; (4) Robert's claim that he financed the venture with $750 in cash which he had in a "piggy bank" in a bureau in his mother's room; (5) though at the trial both Robert and his sister testified he had given her notes to cover the $1,000 balance, Robert had previously made oath in his statement to the insurance company that he had not signed any notes (no notes were produced at the trial, Mrs. Sauber explaining that they had been entrusted to Robert's mother who had reported that she could not locate

them)·; (6) when Robert completed his high school course some six months later (in June 1950) he did not come to Washington to run the business or assist in running it, but worked for a furniture store in Baltimore;[1] (7) though occupancy permit, electric meter deposit and bank account were in Robert's name (with power of attorney in David Milloff to act for him), there was evidence from which the jury could have found that Robert took no real part as owner in directing or overseeing the operation of the business and that David Milloff exercised all or most of the prerogatives of an owner; (8) two insurance adjusters testified that Robert told them he did not know how much rent was being paid for the store, did not know whether he had ever filed an income tax return for the business, did not know the amount of inventory at the store or whether a set of books was being kept, and that he left everything to David Milloff; (9) for his services as manager, David Milloff drew, under what was described as a percentage basis, sums several times as great as those received by Robert Fischer; (10) David Milloff, as plaintiff knew, had earlier operated a shoe store at the same location, had later closed it, and had difficulty with his creditors; (11) David Milloff was not produced as a witness. His brother, Simon Milloff, owner of the building was called; Helen Sauber, vendor and former owner of the business was called; Robert Fischer was called; but David Milloff, a principal actor in the transaction and the one most actively in charge of the business from the time Fischer allegedly became the owner down to the moment of the fire, was not produced as a witness, nor was a word of explanation offered for the failure to put him on the stand. Moreover, it is clear that this was no mere inadvertence of counsel but a deliberate election. This was, therefore, a clear case for the application of the rule that the jury would have been justified in drawing the inference that the testimony of this man would have been unfavorable to the plaintiff. This of course is no mere technicality; it is a presumption long recognized as basic in trial evidence and consistently adopted as a routine court procedure. See Washington Gas Light Co. v. Biancaniello, 87 U.S.App. D.C. 164, 183 F.2d 982; Krupsaw v. W. T. Cowan, Inc., D.C.Mun.App., 61 A.2d 624. See also 2 Wigmore, Evidence § 285 et seq. (3rd edition).

■ We think we need only say that on the basis of the above features in the evidence, reasonable men might certainly differ not only as to the basic facts but also as to inferences to be drawn from the facts. The evidence fell far short of compelling a finding that Robert Fischer was the owner of the business. Coverage was under what is described as the "1943 New York standard fire insurance" type of policy and recovery thereunder is not permitted "in any event for more than the interest of the insured" in the property covered. We think, therefore, that it must be held that it was a part of the plaintiff's affirmative burden to establish his insurable interest (i. e., his property right or ownership) in the chattels damaged in the fire. 46 C.J.S., Insurance, § 1318; 21 Appleman, Insurance Law and Practice, § 12223. And as we have indicated, because of the dubious aspects of the evidence we have described above, it cannot be said as a matter of law that plaintiff discharged that burden so completely as to leave nothing for the jury to pass upon.

Appellee argues that this defense was really one of fraud and that the burden of proving fraud rested on the insurance companies. We think it is true that the two defenses were similar and related. We also think that the "false swearing" at-

1. Robert worked in Baltimore until March 1951 and then went into the Navy. He was discharged in September 1951 because of an ankle fracture. He explained that while he was recuperating he had to have a sit-down job and could not subject himself to the strain of working in the shoe store. For that reason he took an inside or desk job in a Baltimore jewelry firm. We venture no unfavorable characterization of that explanation; we include it to round out the sequence of the narrative.

tributed to plaintiff might have amounted to fraud, in that it might have been found to be part of a scheme to collect for a fire loss in his own name in behalf of a secret principal, David Milloff. Though the burden of proving the overall fraudulent scheme would rest on the insurance companies, the plaintiff would have the initial burden of establishing that he had an insurable right. But for the purpose of this appeal, irrespective of where the burden of proof rested, it was erroneous to say that the defendants had no right to go to the jury.

Reversed, with instructions to set aside judgments and award new trials.