ASMARO et al., Appellees,

v.

JEFFERSON INSURANCE COMPANY OF NEW YORK, Appellant.

[Cite as *Asmaro v. Jefferson Ins. Co. of New York* (1989), 62 Ohio App.3d 110.]

Court of Appeals of Ohio,
Lucas County.

No. L–88–030.

Decided March 31, 1989.

*Charles A. Stupsker,* for appellees.
*Harold Reader* and *Linda Mittleman,* for appellant.

*Per Curiam.*

This is an appeal from the Lucas County Court of Common Pleas, where appellees,[1] Alaa Asmaro and Asmaro, Inc., d.b.a. The Wonder Market ("Asmaro Inc.") filed a complaint against appellant, Jefferson Insurance Company of New York ("Jefferson") alleging breach of an insurance contract and bad faith. The complaint prayed for compensatory damages on both claims and punitive damages on the bad faith claim.

These claims arose out of a fire loss to a building located at 858 Indiana Avenue, Toledo, Ohio (the building), which was owned by appellee, Alaa Asmaro, at the time of the fire. The building housed The Wonder Market, a small family grocery store owned by appellee, Asmaro Inc., also referred to as Asmaro Corp., an apartment on the second floor and a small church in the back. Alaa Asmaro was the sole shareholder of Asmaro Inc.

A jury trial was held and appellees were awarded $37,700 for damages to the building and $25,000 for damages to the contents of the building under the breach of contract claim. Appellees were further awarded $50,000 in extracontractual damages on the bad faith claim and $75,000 in punitive damages. Jefferson has appealed bringing four assignments of error for our consideration:

"I. The trial court erred in overruling Jefferson's motions for directed verdict and judgment notwithstanding verdict on the 'bad faith claim' for extracontractual and punitive damages.

"A. There was no evidence of malice or other similar conduct necessary to an award of extracontractual or punitive damages.

"B. Jefferson's arson defense was justifiable and reasonable.

"C. There was no evidence of separate damage necessary to support an award of extracontractual damages.

"D. The claim for bad faith was never properly alleged in the pleadings.

"II. The trial court erred in denying Jefferson's motions for directed verdict and judgment notwithstanding the verdict because the Asmaros failed to introduce sufficient evidence of their damages.

"III. The trial court erred in permitting Alaa Asmaro to recover damages for a building for which he lacked an insurable interest.

---

1. The caption of this case was misstated at some point in the proceedings below. The complaint, however, names two separate and distinct plaintiffs.

"IV. The trial court erred by permitting counsel for Alaa Asmaro to argue about delay in the processing of the insured's claim without admitting evidence of the dismissal of a prior lawsuit dealing with the same occurrence."

We will first address appellant's third assignment of error in which Jefferson states that the trial court erred in awarding damages to appellee Alaa Asmaro for loss to the building since he did not have an insurable interest in the building. Jefferson's argument under this assignment of error does not parallel its statement of the error. Jefferson actually argues that Alaa Asmaro should not have recovered damages for loss to the building because *Asmaro Inc.* had no insurable interest in the building. As stated earlier, the building was owned by Alaa Asmaro, not by Asmaro Inc.

█ In our attempt to untangle this argument the court has come to the following conclusions based on the facts of this case. Alaa Asmaro had an insurable interest in the building since he in fact owned the building. However, Alaa Asmaro did not have any insurance on the building since Asmaro Inc. was the named insured on the insurance policy. The policy states that Jefferson shall be liable for certain losses sustained by the *insured.* Therefore, Jefferson is not liable under the insurance contract for any losses sustained by Alaa Asmaro individually.

█ As for Jefferson's argument that Asmaro Inc. did not have an insurable interest in the building, we are not persuaded. It is true that Asmaro Inc. did not own the building; however, it has been held that "to recover under an insurance policy for fire loss to property, an insured must have an insurable interest in the property at the time of the loss. * * * '[A]nyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction.' 30 Ohio Jur.2d § 305." *Paterson–Leitch Co. v. Ins. Co. of North America* (N.D.Ohio 1973), 366 F.Supp. 749, 752.

Asmaro Inc. owned the business which was housed in the building. This was a neighborhood grocery business which depended on walk-in customers. Asmaro Inc. would therefore suffer a loss from destruction of the building which would force it to relocate its business. We find that Asmaro Inc. had an insurable interest in the building.

Having found that Alaa Asmaro had an insurable interest in the building but no insurance, and that Asmaro Inc. had an insurable interest in the building and insurance coverage on the building, we hold that the trial court erred in permitting Alaa Asmaro to recover damages for loss to the building and that all damages for such loss should have been awarded to Asmaro Inc. Thus, we find appellant's third assignment of error well-taken to the extent

that it states the trial court erred in permitting Alaa Asmaro to recover damages for loss to the building. We further find that all damages for loss to the building should have been awarded to Asmaro Inc. Finally, we find appellant's third assignment of error to be not well-taken to the extent that it argues no insurable interest on the part of Asmaro Inc.

Having found that Asmaro Inc. had an insurable interest in the building, we now proceed to address the issue raised in appellant's second assignment of error on the issue of the sufficiency of the evidence introduced to prove damages for breach of contract. Damages for breach of contract were awarded in the amount of $37,700 for loss to the building and $25,000 for loss to the contents of the building (the inventory of the business).

The insurance contract states, "The company shall be liable for loss to property * * * only when the whole loss to such property exceeds the 'Deductible Amount' specified in said Schedule and then only for the amount of such excess." Under the heading "Valuation," the contract states that all property except stocks, tenants' improvements, and valuable papers is to be valued "at actual cash value at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, nor in any event for more than the interest of the named insured." Thus, the lesser of (1) the actual cash value of the building and inventory, and (2) the repair or replacement cost of the building and inventory is the limit of damages available under the contract.

■ Appellant's second assignment of error alleges that the trial court erred in denying its motion for a directed verdict and its motion for judgment notwithstanding the verdict on the issue of damages to both the building and its contents. First, addressing the question of a directed verdict on the issue of damages to the building, we find that the trial court was correct in denying this motion. A directed verdict may not be granted by a trial court if "there is sufficient evidence, if believed, relating to [an] issue to permit reasonable minds to reach different conclusions on that issue." *Helmick v. Republic– Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 74, 529 N.E.2d 464, 467 (quoting *O'Day v. Webb* [1972], 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 426, 280 N.E.2d 896, 899). Jefferson contends that there was no evidence introduced at trial to establish the actual cash value of the building, and that this information was necessary to compute damages under the contract.

Actual cash value is established by one of two methods in Ohio: market value of the property at the time of loss, or the cost of repairs minus depreciation, if any. *Florea v. Nationwide Mut. Fire Ins. Co.* (Jan. 28, 1983), Montgomery App. No. 7908, unreported, 1983 WL 5030. See, also, *Paterson–*

*Leitch Co. v. Ins. Co. of North America, supra.* Testimony at trial established that an estimate for repairs to the building was $37,764. This estimate was made at the request of Jefferson. Jefferson's agent, Roger Schultz, from GAB Business Services, Inc., an insurance adjuster service, testified that he received this estimate, factored in depreciation, and concluded that the repair cost minus depreciation would be $22,493. Therefore, there was sufficient evidence before the jury to allow it to make a decision on damages for loss to the building under the contract, and it was not error for the trial court to refuse to direct a verdict on this issue.

■ We next address the issue of whether the trial court correctly refused to grant appellant's motion for judgment notwithstanding the verdict on the issue of damages under the contract for loss to the building. The standard a trial court should use in deciding a motion for judgment notwithstanding the verdict is stated in *Cataland v. Cahill* (1984), 13 Ohio App.3d 113, 114, 13 OBR 131, 132, 468 N.E.2d 388, 390, where the court stated:

"Pursuant to Civ.R. 50(B), where there has been a verdict for plaintiff, the test to be employed by the trial court in determining whether to sustain a motion for judgment notwithstanding the verdict is whether the defendant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the plaintiff."

As stated above, the measure of damages for loss to the building under the insurance contract in this case is the lesser of the actual cash value or the repair costs. The actual cash value can be measured as repair cost minus depreciation, which in this case was $22,493. Since this is less than the repair cost of $37,764 the award of damages under the contract for loss to the building should have been $22,493, not $37,700. We find that the trial court erred in not granting appellant's motion for judgment notwithstanding the verdict [2] and we reverse the trial court's decision dated January 8, 1988. Pursuant to App.R. 12(B) we enter the final order the trial court should have rendered, namely judgment rendered against defendant, in favor of plaintiff Asmaro Inc., in the amount of $22,493 for damages to the building under the insurance contract.

---

**2.** We realize that the jury was not fully instructed on the method to use in assessing damages, and that no objections were made to the incomplete instructions. However, we find the calculation of damages to be plain error. The jury instructions on this issue were:

"If the damage to the property is temporary and the property can be restored to its original condition, then the owner may recover the reasonable cost of these necessary repairs. However, if the repair cost exceeds the actual value of the building, then the actual cash value is the measure of damages."

No explanation of how the jury was to arrive at the actual cash value was given.

■ We next address appellant's argument under its second assignment of error that the trial court erred in denying its motion for a directed verdict and motion for judgment notwithstanding the verdict on the issue of contractual damages to the contents of the building. As stated above, the measure of these damages under the contract is the lesser of the actual cash value of the inventory and the repair or replacement cost of the inventory. Actual cash value can be established as market value of the property at the time of loss. *Florea v. Nationwide Mut. Fire Ins. Co., supra.*

There was testimony at trial that the market value of the inventory at the time of loss was $42,613. Further testimony established that the market value reflected a twenty-five percent markup from what appellees paid for the inventory, giving a figure of approximately $31,875[3] in replacement cost. Finally, there was testimony that appellees received about $6,200 in salvage value for the salvageable inventory. Using these figures, the jury correctly set the damages for loss to inventory at $25,000. Thus, we find that the trial court was correct in denying appellant's motion for judgment notwithstanding the verdict and motion for directed verdict on the issue of damages for loss to inventory.

To summarize appellant's second assignment of error, we find it well-taken in part and not well-taken in part. We affirm the trial court's denial of appellant's motion for a directed verdict on the issue of damages under the contract and we reverse its denial of appellant's motion for judgment notwithstanding the verdict insofar as it concerns the amount of damages awarded on the loss to the building under the contract. We affirm the trial court's denial of appellant's motion for judgment notwithstanding the verdict insofar as it concerns the amount of damages awarded on loss to the contents of the building.

In appellant's first assignment of error it is alleged that the trial court should have directed a verdict or granted its motion for judgment notwithstanding the verdict on the bad faith claim and the punitive damages issue. Jefferson makes this allegation based on four reasons: there was no evidence of malice introduced at trial, its arson defense was justifiable and reasonable, there was no evidence introduced of extra-contractual damages to support an award for the bad faith claim, and the bad faith claim was not properly alleged in the complaint.

---

**3.** This figure was given to the jury by appellees during closing argument as reflecting the wholesale price of the goods before the twenty-five percent markup. Because this figure was submitted by appellees, we let it stand, but note that a wholesale price of $34,090.40 (not $31,875) plus twenty-five percent markup equals the retail inventory value of $42,613.

■ Ohio recognizes a cause of action in tort against insurance companies for wrongful failure to pay the claim of an insured. *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, paragraph one of the syllabus. This tort, commonly termed a "bad faith claim," is not the same as a breach of contract claim which limits recovery to the amount due under the insurance contract. *Id.* at 276, 6 OBR at 340, 452 N.E.2d at 1319. A bad faith claim, if proven, allows recovery of what is known as extra-contractual damages. These are actual damages over and above those covered by the insurance contract sustained by the insured as a consequence of the insurer's bad faith and encompass such things as interest on the amount of money wrongfully withheld under the contract and damages resulting from the insured's inability to pay for needed repairs. See, generally, Shernoff, Gage & Levine, Insurance Bad Faith Litigation (1988) 7–17 to 7–18, Section 7.04[1]. Further, if bad faith is proven, punitive damages are available upon a showing of actual malice. *Hoskins v. Aetna, supra,* at paragraph two of the syllabus.

A directed verdict may not be granted by a trial court if "there is sufficient evidence, if believed, relating to [an] issue to permit reasonable minds to reach different conclusions on that issue." *Helmick v. Republic–Franklin Ins. Co.,* 39 Ohio St.3d at 74, 529 N.E.2d at 467. A motion for judgment notwithstanding the verdict shall be granted a defendant only if, based on the evidence submitted at trial, the defendant is entitled to judgment as a matter of law. *Cataland v. Cahill, supra.* Therefore, we must analyze the issues of bad faith and punitive damages and assess whether the trial court, based on the evidence submitted at trial, correctly refused to direct a verdict or grant appellant's motion for judgment notwithstanding the verdict on these issues.

■ Addressing first the issue of bad faith, it has been held that the insured has the burden of proving that the insurer's refusal to pay a claim was arbitrary and capricious. *Hoskins v. Aetna, supra.* In other words, the insurer's actions "must be based on circumstances that furnish reasonable justification" for the refusal to pay. *Hoskins v. Aetna,* 6 Ohio St.3d at 277, 6 OBR at 341, 452 N.E.2d at 1320. If the insurance company's actions were not reasonable and justifiable, then the insured has established bad faith.

We believe that the evidence in this case was sufficient to permit reasonable minds to come to different conclusions on the issue of whether Jefferson Insurance had a reasonable justification for refusing to pay appellees' fire loss claim. The evidence adduced at trial disclosed that on December 3, 1983 fires were set in the bedrooms of the second floor apartment of the building. Jefferson Insurance contended at trial that the fire was started by the insured

or with the insured's knowledge and thus the loss fell under an exclusion in the policy.

The fire was investigated by Rick Spencer, at Jefferson's request, who issued a report to Jefferson through GAB Services, Inc., which was hired to adjust this claim. Spencer's report stated in part:

"*Evidence*

"A. There were a total of 30 photographs taken during the course of the investigation.

"B. A non-scaled schematic was prepared displaying the general layout of the involved portion of the building and various points of interest.

"C. A total of three samples were selected from the upper apartment near the two separate fire origins. A copy of the laboratory report is attached for your review.

"D. An oral statement from Mr. Frank Coley, 955 Pinewood, Toledo, Ohio, was obtained. Mr. Coley stated that he had been an associate of the second floor tenant. The tenant was a Mr. Holloway, current address unknown. Mr. Coley had a Pit Bull dog in the apartment at the time of the fire. Holloway was to have been keeping this dog for Mr. Coley. The dog was killed in the fire. Mr. Coley stated that Mr. Holloway and the insured had had a falling out. Holloway was served with an eviction and was to be out of the apartment by December 1, 1983. Mr. Coley was to help Mr. Holloway move. Mr. Coley stated that he had seen Mr. Holloway at the apartment prior to the fire. Mr. Coley's opinion is that Mr. Holloway set the fire. Mr. Coley mentioned briefly that Mr. Holloway had been laughing about the fire, but Mr. Coley would not go into detail about this. Mr. Coley stated that he was going to find Mr. Holloway and turn him over to the Arson Squad. (After listening to Mr. Coley, Investigator William Johnson, Toledo Arson Squad, was contacted and the above information was turned over).

"*CONCLUSIONS*

"Based on the evidence at the scene and as outlined in this report, it is B & A, Inc.'s opinion that the following events occurred:

"1. On December 4, 1983, person or persons entered the apartment known as 858½ Indiana Avenue with the intent to set one or more fires within the described dwelling.

"2. A flammable liquid was poured over a mattress which was placed in an upright position in the corner of the northeast bedroom and ignited.

"3. A flammable liquid was dispensed onto the floor of the southeast bedroom and ignited. This in turn created a second separate fire origin within the apartment.

"4. Since the responding Toledo, Ohio firemen found the building secure upon arrival, it is concluded that the person or persons responsible for the subject incendiary fire would have had to possess a key or similar device to gain entry to the apartment.

"Therefore, it is B & A, Inc.'s opinion that the subject fire was incendiary in nature, with two separate points of origin.

"Further it is B & A, Inc.'s opinion that a flammable liquid was used to aid in the progression of this fire."

Appellees allege that based on this report, Jefferson had no reasonable justification for denying their fire claim since the report in no way links the insured to the arson and strongly suggests that the second floor tenants had set the fire. Appellees also presented evidence that two days prior to the fire they told the tenants they were being evicted for non-payment of rent.

Jefferson contends it was reasonably justified in denying appellees' claim based on circumstantial evidence tending to show that appellees were responsible for the fire. Evidence at trial revealed that appellee, Alaa Asmaro, had a key to the upstairs apartment thereby giving him access to the area where the fire was started. Evidence was also given that Asmaro Inc.'s corporate taxes had not been paid for six months prior to the fire and that the second floor tenants had not paid their rent or security deposit owed to Alaa Asmaro. Jefferson contends that this evidence shows a financial motive for appellees to have been responsible for the fire.

There was evidence presented showing that appellees had increased the limits of the insurance policy three months prior to the fire. Finally, there was evidence that the manager of the grocery store was arrested for a food stamp-related violation a few days after the fire. Jefferson contends that this arrest is circumstantial evidence that appellees knew the grocery business would not remain profitable much longer, thus supplying an additional arson motive.

In reviewing this evidence as a whole, we believe that, in spite of circumstantial evidence introduced by Jefferson, the fact that Jefferson's fire investigator's report strongly suggests that the tenants set the fire created a question for the jury on the issue of whether Jefferson was reasonably justified in refusing to pay this claim. Therefore, the trial court was correct in refusing to direct a verdict on the issue of bad faith and in denying appellant's motion for judgment notwithstanding the verdict.

Jefferson also contends that even if it is found liable for the bad faith claim, appellees did not introduce any evidence to support an award of extra-contractual damages and a verdict should have been directed in its favor, or

its motion for judgment notwithstanding the verdict granted, on the issue of bad faith, extra-contractual damages. As stated above, extra-contractual damages are those not covered by the insurance contract which are sustained because of the insurance company's bad faith.

Appellees presented evidence that they did not have the money to pay for the repairs to the building themselves. As a result, the building was vandalized, became a health hazard, and was ordered destroyed by the Toledo Board of Health. Thus, appellees lost their entire building, their business and all of its inventory. The damage to the building and the loss of the inventory were covered by the insurance contract. However, the loss of the business and the loss of the building, over and above the fire damage, were not covered by the insurance contract. Therefore, appellees did prove that they suffered extra-contractual damages as a result of Jefferson's bad faith. The problem is that appellees did not prove the *amount* of the extra-contractual damages. There was no evidence offered at trial to establish the value of the business at the time of the loss. Nor was there evidence as to the value of the fire-damaged building which was destroyed. The jury was thus left to speculate as to an amount to award for extra-contractual damages.

Based on the above discussion, we hold that the trial court did not err in failing to grant a directed verdict in favor of appellant on the issue of bad faith, but did err in failing to grant that motion on the issue of the *amount* of damages flowing from the appellant's act of bad faith. We therefore modify the trial court's decision and pursuant to App.R. 12(B) enter the final order the trial court should have rendered: namely, a directed verdict is granted to defendant on the issue of the *amount* of damages for bad faith, that is, the plaintiffs have failed to prove the amount of damages flowing from Jefferson's act of bad faith, but have proven that they were in fact damaged from the bad faith. Finally, we modify the final judgment entry of the trial court by reducing the amount of damages awarded for bad faith from $50,000 to zero.

◼ We next address the issue of punitive damages under appellant's first assignment of error. Jefferson contends that the trial court should have directed a verdict on this issue because there was no evidence of actual malice to support punitive damages. The finding of bad faith on the part of an insurer does not automatically entitle the insured to punitive damages. *Hoskins v. Aetna, supra.* The insured must also prove malice. *Id.* In *Detling v. Chockley* (1982), 70 Ohio St.2d 134, 137–138, 24 O.O.3d 239, 241, 436 N.E.2d 208, 210–211, the Supreme Court of Ohio stated:

"Evidence of actual malice, therefore, must be present before a jury question of punitive damages is raised; actual malice may take either the

form of the defendant's express ill will, hatred or spirit of revenge, or the form of reckless, wilful or wanton behavior which can be inferred from surrounding circumstances. In either case, the defendant's actions must have been 'intentional and deliberate, or * * * [have] the character of outrage frequently associated with crime.' * * *

"An act of mere negligence does not, of itself, demonstrate the degree of intention and deliberation necessary to raise a question of punitive damages. * * * 'Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or "malice," or a fraudulent or evil motive on the part of the defendant, *or such a conscious and deliberate disregard of the interests of others that his conduct may be called wilful or wanton.* * * *' Prosser on Torts (4 Ed.), at pages 9–10." (Emphasis added.)

Therefore, if there was evidence presented, even if only circumstantial, that Jefferson's refusal to pay appellees' claim was "a conscious and deliberate disregard of the interests of others," *id.*, then the issue of punitive damages was properly before the jury in this case. See, also, *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus.

Jefferson directs this court's attention to a recent Ohio Supreme Court case, *Helmick v. Republic–Franklin Ins. Co.,* 39 Ohio St.3d at 75, 529 N.E.2d at 467, where the court held that the record in that case was devoid of any evidence of actual malice and vacated a punitive damage award against the insurance company. In that case the facts were such that the insurance company was obviously reasonably justified in questioning coverage of the fire loss and no actual malice was shown. The fire investigator concluded, in that case, that the loss was due to arson. The insured was well behind in his mortgage payments, his automobile loan and his motor home payments. Further, the insured owed his ex-wife $7,500. His home mortgage was being foreclosed and a witness stated that the insured had said he would burn his home before he would let the bank have it.

In the instant case, there are no parallel facts of such a compelling nature. It was conceded that appellees' loss was caused by arson. However, all investigations and facts surrounding the fire strongly support the conclusion that appellees' second floor tenants, who were being evicted, set the fire. There was no evidence linking appellees to the fire except the fact that they owned and occupied the building.

Jefferson makes much of the fact that the limits of insurance were raised three months prior to the fire. Appellees stated that they increased the insurance limits because business had increased, they had applied for a lottery machine, and were expecting further increased profits in their business. In

fact, the lottery machine was due to be delivered two days after the fire. Appellees' insurance broker, who wrote the policy increase, stated that it was quite normal to make such an increase since appellees had not changed the limits on their insurance since they started the business in 1981.

There was no evidence that appellees were in any significant financial trouble. Their business had made profits of $22,477 in 1981, $23,690 in 1982, and $25,978 through November 1983. Their corporate taxes had not been paid for six months, but there was no evidence of any other arrearages on appellees' debts.

Jefferson also relies heavily on the fact that the manager of the grocery store, appellee Alaa Asmaro's brother, was indicted on a food stamp-related charge a few days after the fire, intimating that the store would lose its food stamp license and become unprofitable.

These circumstances, taken as a whole, would be enough to put an insurance company on notice that a claim may be fraudulent. However, after an investigation is made into the cause of a fire and that investigation reveals the strong probability that persons other than the insured burned the property as revenge for being evicted, the insurance company's persistence in claiming that the insured was responsible for the fire is enough to support a jury's conclusion that the insurance company acted with actual malice. This is especially true in the instant case where the record reveals that the insurance company neither denied the insured's claim nor offered any explanation for its refusal to pay the claim until appellees filed their complaint seven months after the fire and after their building had been destroyed under an order from the health department. Based on these circumstances, we find that the trial court did not err in denying appellant's motion for directed verdict on the issue of punitive damages.

 Finally, concerning the issue of punitive damages in appellant's first assignment of error, appellant contends that appellees did not properly allege actual malice in their complaint. In *Hoskins v. Aetna, supra,* the Supreme Court of Ohio, in dicta, found that a claim for bad faith had not been adequately stated in the complaint. The Supreme Court of Ohio stated that the complaint, which alleged that the insurance company's "failure to notify appellees of the change in coverage and * * * failure to fully investigate" supported an action for bad faith, 6 Ohio St.3d at 279, 6 OBR at 343, 452 N.E.2d at 1322, did "not assert sufficient facts to demonstrate that appellant's conduct in denying its insured's claim was motivated by actual malice." 6 Ohio St.3d at 278, 6 OBR at 342, 452 N.E.2d at 1321. In the instant case, appellees' complaint stated:

"Defendant Jefferson Insurance Company of New York has acted in bad faith in that it knew, or should have known, that plaintiffs were entitled to recover under the terms of the fire insurance policy described above, for their losses, but defendant Jefferson Insurance Company of New York has failed and refused to honor plaintiffs' demand.

"As a result of the delays caused solely by defendant Jefferson Insurance Company of New York, the premises located at 858 Indiana Avenue, Toledo, Lucas County, Ohio has [sic] suffered additional substantial damages due to vandalism and deterioration.

"Defendant Jefferson Insurance Company of New York's wrongful action in bad faith has damaged plaintiffs in the amount of $75,000 plus interest from the date of loss, and punitive damages."

We find that this language was adequate to put appellants on notice of the bad faith claim being made against them. This is all that is required in a complaint under Civ.R. 8(A). *Salamon v. Taft Broadcasting Co.* (1984), 16 Ohio App.3d 336, 338, 16 OBR 385, 387, 475 N.E.2d 1292, 1295.

To summarize our ruling on appellant's first assignment of error, we find it well-taken in part and not well-taken in part. We find appellant's allegation that the trial court erred in denying its motion for a directed verdict on the issue of bad faith not well-taken, but hold that the trial court erred in denying appellant's motion for a directed verdict on the issue of the *amount* of damages sustained by appellees as a result of appellant's bad faith. We further hold that appellees did prove that they suffered damages from the bad faith. We also find that the trial court correctly denied appellant's motion for a directed verdict on the issue of punitive damages.

 Appellant's fourth assignment of error alleges that the trial court erred in allowing appellees to refer to the length of appellant's delay in processing this fire loss claim, while at the same time refusing to admit evidence of appellees' dismissal of a prior lawsuit which appellant claims justifies the delay. Any error in this regard is harmless based on the following ruling by the trial court:

"THE COURT: I have given counsel authority in final argument, should the plaintiff start discussing a three and a half year delay or any delay of that size or quality, then defense attorney has the right to offer what he feels is the explanation for the delay."

Appellant's counsel, therefore, had the opportunity during closing argument to explain to the jury the procedural history of the case, including the fact that a prior case dealing with the same occurrence and filed by appellees had been voluntarily dismissed by appellees, thus explaining appellant's delay in

processing the insurance claim. We find appellant's fourth assignment of error not well-taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas is modified in part, affirmed in part, and reversed in part, as explained above. Pursuant to App.R. 12(B) we modify the trial court's September 14, 1987 judgment entry to read:

"Final judgment be, and hereby is rendered against defendant in favor of the plaintiff Asmaro Inc. aka Asmaro Corp. on the following claims for relief asserted by plaintiff: (1) $22,493 for damages to the building under the insurance contract. (2) $25,000 for damages to the contents of the building under the insurance contract. (3) Zero for extra-contractual damages. (4) $75,000 in punitive damages."

It is ordered that appellant and appellees each pay one half of the court costs of this appeal.

*Judgment modified.*

HANDWORK, P.J., GLASSER and ROHRS, JJ., concur.

KENNETH A. ROHRS, J., of the Henry County Court of Common Pleas, sitting by assignment.