TECHNICAL LAND, INC., Appellant,

v.

FIREMEN'S INSURANCE COMPANY OF WASHINGTON, D.C.,
Appellee.

No. 97–CV–1518.

District of Columbia Court of Appeals.

Argued April 22, 1999.
Decided July 27, 2000.

---

**3.** Mr. Dunietz has filed the affidavits required by our rules and by the relevant case law.

Christopher Conte, with whom Stanley L. Lipshultz, Silver Spring, MD, was on the brief, for appellant.

Craig D. Roswell, Baltimore, MD, for appellee.

Before TERRY and RUIZ, Associate Judges, and KERN, Senior Judge.

RUIZ, Associate Judge:

■ This appeal raises a novel issue concerning the type of interest—other than one based on legal or equitable title—that is insurable. We hold that an insurable interest in property can be shown when a party stands to benefit economically from a unique property or to suffer loss from its destruction, and that Technical Land should have the opportunity to make the necessary showing.

## I.

The relationships among the various entities in this appeal are somewhat involved and complicated by legal and bankruptcy procedures, so we describe them in some detail. Technical Land, Inc., the plaintiff-appellant, is a District of Columbia corporation in which William Moore and Judith Deitz Moore are the sole stockholders. Techniarts Video International, Inc. (TVII), also owned and operated by the Moores, had a Use Agreement which allowed it to occupy the property at 1631 Kalorama Road. Techniarts Engineering (Techniarts) is a partnership owned by the Moores which owned equipment that was damaged by water when pipes burst at the building on 1631 Kalorama Road. The subject of this appeal is Technical Land's insurance claim concerning damage to the

building itself, not to Techniarts' equipment.[1]

Techniarts had a business relationship with 1631 Kalorama Associates, the owners of the property at 1631 Kalorama Road, for the purpose of building and developing a motion picture studio on the premises.[2] On December 11, 1991, Techniarts filed suit against Kalorama Associates and obtained a judgment in the amount of $131,055.13. *See Techniarts Video, Inc. v. 1631 Kalorama Assocs.*, 572 A.2d 1051 (D.C. 1990). The Moores, on behalf of Techniarts, executed on the judgment and received a Marshal's Deed for the property at 1631 Kalorama Road on September 30, 1992. On December 10, 1992, the Moores obtained a Superior Court order substituting Technical Land as the owner of the property.[3] The revised Marshal's Deed to Technical Land was dated January 7, 1993.

On April 1, 1993, a creditor of 1631 Kalorama Road Associates filed an action in the Superior Court against, *inter alia*, Technical Land, questioning the validity of the January 7, 1993 Marshal's Deed. After Technical Land filed for bankruptcy, the creditor's action was transferred to the United States Bankruptcy Court for the District of Columbia.[4] On February 25, 1994, while the litigation contesting the validity of the Marshal's Deed to Technical Land was pending, TVII negotiated a Use Agreement with the Trustee for the Bankruptcy Estate of 1631 Kalorama Associates.

The Use Agreement, approved by the Bankruptcy Court on March 16, 1994, recognized that the right to ownership and possession of the premises was in dispute, but wished "to maximize the value of the property." Until the ownership dispute was resolved, the premise was to be "operated as a motion picture and television production facility." It gave the Trustee exclusive control over the property, including authority to sell the building, but gave TVII the right to use all of the space in the building. In exchange, TVII was responsible for maintenance, payment of utilities and operating expenses. With respect to insurance, the Use Agreement provided:

> The Trustee has in place liability and property and casualty insurance at this time. TVII shall in addition maintain its own liability insurance with the estate as loss payee in an amount of not less than $1,000,000 and shall be responsible for insurance of all its own equipment.

> The Parties will cooperate in attempting to obtain building insurance that is less expensive in light of the occupancy status of the building.

In June 1994, the Bankruptcy Court declared the Marshal's Deed to Technical Land invalid,[5] but Technical Land, with

---

1. Neither Techniarts nor TVII is a party in this case.

2. The property at 1631 Kalorama Road had been a skating rink, and was converted to house a large sound stage, a smaller television studio, and assorted support and storage spaces.

3. The Moores had just formed Technical Land in September 1992 with the intent of operating *a motion picture and television studio on* the 1631 Kalorama Road property under the trade name "Kalorama Studios."

4. 1631 Kalorama Associates, which was also in bankruptcy, similarly contested the validity of the January 7, 1993, Marshal's Deed naming Technical Land as the owner of the building.

5. The Bankruptcy Court declared that the marshal's sale was illegal and void, and passed *no title, see Wiswall v. Sampson,* 55 U.S. (14 How.) 52, 68, 14 L.Ed. 322 (1852), because it purported to sell property that was in *custodia legis. See Jarvis v. Technical Land, Inc.* (*In re Technical Land Inc.*), 172 B.R. 429, 432 (Bankr.D.C.1994). The Bankruptcy Court also permitted Technical Land to apply to the Receivership Court to reinstate the judgment and the Marshal's Deed, but there is no evidence that the Moores took such action. The Bankruptcy Court's decision was affirmed by the United States District Court. *See Jarvis v. Technical Land, Inc. (In re Technical Land Inc.),* 175 B.R. 792 (D.D.C.1994).

the permission of TVII under the Use Agreement, continued to occupy the building until August 1995, when Technical Land vacated the premises upon expiration of the Use Agreement between the Trustee and TVII.

On December 10, 1993, the same day Technical Land had obtained the Superior Court order assigning the Marshal's Deed from TVII to Technical Land, and some six months before the deed was invalidated by the Bankruptcy Court, Technical Land acquired property insurance on the property at 1631 Kalorama Road from appellee, Firemen's Insurance, pursuant to an order of the Bankruptcy Court.[6] The policy covered property damage up to $335,000 per incident, less the amount subject to the co-insurance provision of the policy. It did not cover damage to equipment or loss of business income. Technical Land was the only insured named in the policy.

Technical Land moved into 1631 Kalorama Road on February 28, 1994,[7] and immediately discovered significant water damage.[8] The Moores promptly contacted Firemen's Insurance to file a claim. On March 6, 1994, William Moore met with Gerald Kaplan, the adjuster assigned to Technical Land's damage claim, at the property. Following this meeting, the Moores conducted emergency repairs to the building at a cost of $125,515.94, which they borrowed from their Techniarts partnership.[9] A second loss occurred on June 20, 1994, when a water valve in the heating and air conditioning system burst, damaging the areas that had just been repaired. After receiving notice of the second loss, Firemen's Insurance canceled the policy on July 5, 1994, and returned the premium to Technical Land.

Technical Land's claim for the first loss was denied on June 28, 1994. The letter of denial stated that Technical Land lacked an insurable interest in the property, and that Moore had failed to mention that the prior owner and Trustee for the Bankruptcy Estate of 1631 Kalorama Associates had a policy with Aetna Insurance providing coverage for the building.

Technical Land sued Firemen's Insurance for breach of the contract of insurance and failure to timely pay its claims after Firemen's Insurance refused to indemnify Technical Land for water damage to the building located at 1631 Kalorama Road. Following a two-day bench trial, the trial court ruled in favor of Firemen's Insurance after concluding, *inter alia*, that Technical Land did not have an insurable interest in the property.[10] Technical Land

6. In December 1993, the bankruptcy litigation involving Technical Land was still pending, and Technical Land, as debtor in possession which asserted an ownership interest in the building at 1631 Kalorama Road, was required to obtain property insurance naming Technical Land as the insured party, including "general comprehensive, public liability" insurance.

7. Although Technical Land became the owner of 1631 Kalorama Road on January 7, 1993, it did not immediately take possession of the property because the building was occupied by another creditor of 1631 Kalorama Associates, Ralph D. Kaiser Co., and Technical Land had to file a legal action to obtain possession of the building.

8. On January 18, 1994, the water pipes had burst after the former occupant failed to maintain the heat over the Martin Luther King, Jr. holiday weekend.

9. According to the Moores, these repairs were crucial because Technical Land had entered into a contract with MTV for a televised interview with President Clinton scheduled for April 20, 1994.

10. The trial court also held that Firemen's Insurance did not act in bad faith in not paying the claim and in not completing its coverage inquiry more quickly; Technical Land's appeal is limited to the breach of contract issue.

Firemen's Insurance had also defended on the grounds that even if Technical Land had an insurable interest in the building, that interest was not covered by the policy, and that recovery was in any event limited to the face amount of the policy less 90% coinsurance. The trial court did not reach those defenses and they are not before us. See *infra* notes 20, 22.

appeals from this judgment, arguing that the trial court erred in the factors it considered in deciding that Technical Land did not have an insurable interest in the property. We note that Technical Land belatedly made the precise argument upon which we rule, and, therefore, the trial court did not make the relevant findings of fact and conclusions of law. Nonetheless, Technical Land sufficiently presented to the trial court a factual basis for its claim that it had an insurable interest. Thus, we reverse and remand for trial court consideration of the applicable factors we set out in this opinion.

## II.

■■■ When the trial court sits as factfinder, its factual findings are accorded considerable deference and are reviewed under a "clearly erroneous" standard. *See Davis v. United States,* 564 A.2d 31, 33 (D.C.1989) (en banc); *see also* D.C.Code § 17–305(a) (1997 Repl.) (a judgment may not be set aside unless it appears "plainly wrong or without evidence to support it"). Where the matter under review is a question of law, however, this court exercises *de novo* review. *See United States v. Felder,* 548 A.2d 57, 61 (D.C.1988). Whether a person has an insurable interest is a question of fact. *See Anderson v. State Farm Fire & Cas. Co.,* 397 N.W.2d 416, 417 (Minn.Ct.App.1986). Although Firemen's Insurance contends that Technical Land is seeking review of the trial court's finding of fact that Technical Land

did not have an insurable interest, Technical Land maintains that the trial court's finding that it had no insurable interest in the property is wrong as a matter of law because the trial court did not consider the appropriate factors. We agree with Technical Land and review the trial court's ruling *de novo. See Felder,* 548 A.2d at 61–62.

Technical Land's principal argument on appeal is that the trial court incorrectly considered that an insurable interest in the property could be based only on Technical Land's judgment lien or the Marshal's Deed that was eventually invalidated. To support this contention, appellant details case law from other jurisdictions that an insurable interest in property is determined not only by legal or equitable title, but also by an insured's economic interest in the property measured by the potential for pecuniary benefit or loss that may result from the use of or damage to that property. *See, e.g., Hawkeye–Security Ins. v. Reeg,* 128 Ill.App.3d 352, 83 Ill.Dec. 683, 470 N.E.2d 1103, 1105 (1984); *Miller v. New Jersey Ins. Underwriting Ass'n,* 82 N.J. 594, 414 A.2d 1322, 1325 (1980). We do not read the trial court's ruling as narrowly as appellant suggests.[11] Rather, the trial court reasoned that because Technical Land could show no economic interest in the property itself, the only insurable interest it might have would be through its judgment lien or Marshal's Deed.[12] However, because the Marshal's

---

11. It is evident from the trial court's order of December 26, 1995, denying Firemen's Insurance's motion for summary judgment that the court recognized that Technical Land could have an insurable interest even without the Marshal's Deed. The court stated that although the Bankruptcy Court declared the Marshal's deed void, the lack of a deed did not "necessarily require the conclusion that [Technical Land] had no insurable interest in the insured property thereafter."

12. In its conclusions of law after the bench trial, the trial court stated:

There is no question that Technical Land lost income because of its inability to use the property during the time it was dam-

aged. Also, TVII undoubtedly sustained damage to its property. However, the policy did not insure against lost income or damaged equipment. The policy only insured the building. The question presented, then, is whether Technical Land had an insurable interest in the building. The court concludes that it did not.

With the property in bankruptcy, the Trustee had control of the property, and the right to sell it. Indeed, under the Use Agreement, the Trustee was ordered to obtain insurance for the property. The only insurable interest Technical Land could have had in the property would have been through its judgment lien or the Marshal's deed.

Deed was declared invalid by the Bankruptcy Court, the trial court concluded that Technical Land was left without an insurable interest. The question before this court—one of first impression—is whether Technical Land had an insurable interest in the property other than through legal or equitable title.[13]

## A. *Insurable interest.*

■ Before exploring the limits of an insurable interest, we review a few basic principles. It has been noted that in most states it is "axiomatic" that a valid insurance contract must be based on an insurable interest. *See Lumbermens Mutual Ins. Co. v. Edmister,* 412 F.2d 351, 353 (8th Cir.1969); *see also Metropolitan Police Retiring Ass'n v. Tobriner,* 113 U.S.App.D.C. 168, 170, 306 F.2d 775, 777 (1962) (describing insurance as "contractual security" against loss through "destruction or impairment of an insurable interest").[14] Some jurisdictions require that the insurable interest exist at the time the contract of insurance is executed, *see Wilbanks & Wilbanks, Inc. v. Cobb,* 269 Ark. 936, 601 S.W.2d 601, 603 (1980), some jurisdictions require that the insurable interest exist at the time of loss, *see Universal C.I.T. Corp. v. Foundation Reserve Ins. Co.,* 79 N.M. 785, 450 P.2d 194, 195 (1969), and a number of other jurisdictions require that an insurable interest must exist both when the contract is created and at the time of loss, *see Providence Washington Ins. Co. v. Stanley,* 403 F.2d 844, 848 (5th Cir.1968); *G.M. Bat-*

Technical Land purportedly obtained a lien on the property by virtue of a judgment in an action in which Techniarts sued 1631 Kalorama Associates for breach of contract and obtained a $131,055.13 judgment. The Moores, as the sole partners in Techniarts, obtained a Marshal's Deed on the property, which was transferred to Technical Land. On June 2, 1994, that deed was declared null and void by the Bankruptcy Court. *Jarvis v. Technical Land, Inc.,* 172 B.R. 429 (Bankr.D.C. 1994) (Teel, J.). The United States District Court affirmed Judge Teel's decision in *Jarvis v. Technical Land, Inc.,* 175 B.R. 792 (D.D.C. 1994) (Sporkin, J.) The Bankruptcy Court concluded that prior to the foreclosure sale, the property was taken into *custodia legis* by the Receiver; therefore, no interest in the property could have been transferred by the Marshal's Deed. Thus, the Moores never obtained a judgment lien because their judgment was entered after the Receiver was appointed, and they did not obtain leave of the Receivership Court before attaching the judgment lien. *Jarvis, supra* at 430, 432–33.

The Bankruptcy Court did not leave Technical Land without an equitable remedy. By its order of June 2, 1994, the court directed Technical Land to apply to the Receivership Court in the pending case of *Ralph D. Kaiser Co. v. Lamb,* No. 91–CA–2993 (D.C.Super. Ct., filed Mar. 1, 1991), to reinstate the judgment and Marshal's Deed. However, there is to date no record of such an application, and plaintiff has failed to produce evidence to the contrary.

Technical Land has also attempted to establish insurable interest based on the Use Agreement. That contention fails, however, because the Use Agreement was between TVII and the Trustee in Bankruptcy. Technical Land was not a party to it. Moreover, TVII cannot recover on the instant insurance policy because it was not a party to the policy.

13. Technical Land does not contest the validity of the Bankruptcy Court's order voiding the Marshal's Deed, but instead contends in its brief on appeal that "the validity of legal title is not determinative of its insurable interest in the property." Appellant also does not argue that because the Marshal's Deed was valid at the time the insurance was procured and at the time of the first loss, and Technical Land reasonably believed at those times that it owned the property, Technical Land had an insurable interest in the property. It remains an open question, therefore, whether the after-the-fact invalidity of an otherwise sufficient deed necessarily destroys an insurable interest absent any other evidence of an economic stake in the property at issue. *See Nelson v. New Hampshire Fire Ins. Co.,* 263 F.2d 586, 588–89 (9th Cir.1959) (no insurable interest where the claimant holds the insured property under void conveyance); *see also Miller,* 414 A.2d at 1326 (former owners had insurable interest based on their continued possession even after foreclosure for failure to pay taxes).

14. Neither party disputes that an insurable interest is necessary, although no District of Columbia statute or case law is cited to us in this respect, and we have found none.

*tery & Boat Co. v. L.K.N. Corp.*, 747 S.W.2d 624, 626 (Mo.1988). *See generally* 3 Lee F. Russ & Thomas F. Segalla, Couch on Insurance § 41:15 (3d ed.1995) (explaining that jurisdictions differ on whether an insurable interest must exist at the time of contract formation, at the time of loss or at both contract formation and loss).[15] Property insurance is a contract of indemnity, not a wagering contract, and one without an insurable interest in property incurs no redeemable loss by its destruction. *See Hilltop Bowl Inc. v. United States Fidelity & Guar. Co.*, 259 F.Supp. 649, 652 (W.D.La.1966). A policy reason for defining with concreteness the basis for an insurable interest is that the insurable interest rule exists, at least in part, to discourage illicit uses of insurance. *See Miller*, 414 A.2d at 1324.

■ It is well settled that an insurable interest in property is "not necessarily synonymous with absolute property rights." *Anderson*, 397 N.W.2d at 418. *See also Reeg*, 83 Ill.Dec. 683, 470 N.E.2d at 1105 (explaining that an insurable interest is "not necessarily equated with clear title"); *Miller*, 414 A.2d at 1325 (noting that an insurable interest "need not rise to the level of legal or equitable title"); *Edmister*, 412 F.2d at 353 (explaining that an insurable interest need not be "a fee simple holding or an absolute ownership of property"); 43 Am. Jur.2d *Insurance* § 943 (1999) (stating that "an insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of, the subject matter of the insurance, and neither the title nor a beneficial interest is requisite to the existence of such an interest"). In general, an insurable interest exists when a party has "such a relation or concern with the subject mat-

ter insured that [the party] will derive pecuniary benefit or advantage from its preservation or suffer pecuniary loss or damage from its destruction." *Edmister*, 412 F.2d at 353; *see also G.M. Battery & Boat Co.*, 747 S.W.2d at 626; *Anderson*, 397 N.W.2d at 417; *Reeg*, 83 Ill.Dec. 683, 470 N.E.2d at 1105; 43 Am.Jur. 2d *Insurance* § 943 (1998) (citing cases); Russ & Segalla, *supra*, § 41:11. It is essential, however, that there be a nexus between the loss to the insured and the damage to the insured property for the interest to be insurable. *See Edmister*, 412 F.2d at 354. Thus, a party has no insurable interest unless "by the destruction of the property, [the party] will suffer a loss, whether [the party] has or has not any title to, lien upon, or possession of the property itself." *Anderson*, 397 N.W.2d at 417 (internal quotations and citation omitted); *see also Glens Falls Ins. Co. v. Sterling*, 219 Md. 217, 148 A.2d 453, 456 (1959) (without proof of actual pecuniary loss, insured is not entitled to indemnification under fire insurance policy). The burden of establishing the existence of an insurable interest rests on the insured. *See Northern Ins. Co. v. Fischer*, 103 A.2d 581, 583 (D.C.1954); *see also* 44 Am.Jur. 2d *Insurance* § 1927 (1982).

**B. Technical Land's interest in the property.**

Applying these principles, in order to establish that it had an insurable interest (other than through property rights), Technical Land must show that it suffered a direct pecuniary loss from the water damage to the insured property, the building itself. As the trial court noted, the Trustee for the Estate of 1631 Kalorama Associates had control of the property and

---

**15.** In this case, Technical Land had obtained an order entitling it to a Marshal's Deed to the insured property at the time the insurance contract was executed in December 1993 and had the Marshal's Deed at the time of the first claimed loss in January 1994. The second claimed loss occurred on June 20, 1994, after the Bankruptcy Court declared the Marshal's

Deed null and void on June 2, 1994; that decision was affirmed by the U.S. District Court on December 30, 1994. See *supra* note 5. There is no indication in the record that the Bankruptcy Court's order invalidating the Marshal's Deed was stayed during pendency of the appeal to the U.S. District Court.

the right to sell it. Thus, the Trustee had the most commonly-recognized insurable interest because it suffered a direct financial loss after water damaged the building, thereby decreasing its value. The Use Agreement gave TVII the right to use the property and to contract with studio users; Technical Land was not a party to the agreement.[16]

■ It is undisputed that TVII, and through TVII, Technical Land, held use of the property rent-free under the Use Agreement. At most, Technical Land had a "mere license to occupy" the building by virtue of its association with TVII. Although Technical Land benefitted from the Use Agreement because it was able to use the building at 1631 Kalorama Road, occupancy alone is insufficient to establish an insurable interest. *See Boston Ins. Co. v. Beckett,* 91 Idaho 220, 419 P.2d 475, 479 (1966); *see also Edmister,* 412 F.2d at 354 (status as tenants and fact that insured dwelling was used as business headquarters insufficient to constitute an insurable interest); *Anderson,* 397 N.W.2d at 418 (insured who stored personal property rent free in garage owned by ex-wife had no insurable interest because he had no risk of direct pecuniary loss through damage or destruction of the garage itself);[17] *cf. CLS Mortgage, Inc. v. Bruno,* 86 Wash. App. 390, 937 P.2d 1106, 1108–09 (1997) (under Washington statute defining "insurable interest" as "any lawful and substantial economic interest in the safety or pres-

ervation" of the insured property, neither occupancy nor two percent ownership of property owner's assets, without specific ownership in the property, satisfies insurable interest requirement); *Miller,* 414 A.2d at 1326 (former owners had insurable interest based on their continued possession even after foreclosure for failure to pay taxes).

■ Expenditures to repair the water damage to the building could constitute an insurable interest. *See Bohn v. Louisiana Farm Bureau Mut. Ins. Co.,* 482 So.2d 843, 853 (La.Ct.App.1986). Technical Land did not make the emergency repairs, however; they were made by TVII. Pursuant to the Use Agreement, it was TVII, not Technical Land, that was responsible for "ordinary maintenance" and, at TVII's option, "to advance up to $100,000.00 for repairs and maintenance of the building."

At trial, Technical Land maintained that even though the Marshal's Deed was invalidated, it still had an economic interest in the property in the form of a judgment lien. However, it was Techniarts that sued 1631 Kalorama Road Associates to obtain a judgment lien. Moreover, it was only after Techniarts executed the lien and obtained the Marshal's Deed that the Moores substituted Technical Land as the owner of the property. On these facts, it would be Techniarts, not Technical Land, that had an outstanding judgment lien on the property.[18]

16. There is no evidence in the record of a written sublease or contract between TVII and Technical Land for use of the studio.

17. Technical Land attempts to discount *Edmister* by claiming that the Eighth Circuit misapplied Missouri law in holding that tenant status is insufficient to confer an insurable interest. We read *Edmister* more narrowly, to hold that a tenant does not have an insurance interest based on loss to a business operation undisclosed to the insurer, where, under Missouri statutory law, an insurer must pay the stated value of the property, regardless of actual loss to the insured. *See Edmister,* 412 F.2d at 354. Morever, the Missouri Supreme Court case cited by appellant to show that a tenant has an insurable interest stands for the

narrower proposition that a lessee of a building *who bound itself to obtain property insurance payable to the owner and was held to pay damages for breach of this covenant* has an insurable interest in the property. *See G.M. Battery & Boat Co.,* 747 S.W.2d at 625–26.

18. Technical Land urges us to consider TVII's interests in the Use Agreement and Techniarts' lien in determining whether Technical Land had an insurable interest. Although TVII, Techniarts and Technical Land were related through the Moores' ownership and were operated by the Moores for complementary purposes, we do not lightly ignore the existence of separate legal entities. Only Technical Land was named as the insured party under the Firemen's Insurance policy.

■ Technical Land also contends that because it paid taxes on the property, it therefore had an insurable interest. *See Miller*, 414 A.2d at 1325 (parties who possessed property, collected rents and paid taxes on the property had an insurable interest). The record, however, shows only that Technical Land was billed for property taxes after obtaining the Marshal's Deed, not that it actually paid the taxes. As the Marshal's Deed was voided *ab initio*, it would follow that the obligation to pay taxes based on that deed would be set aside. Thus, the above factors, singly or in conjunction, do not support Technical Land's having an insurable interest in the building.[19]

Technical Land cites *Asmaro v. Jefferson Ins. Co.*, 62 Ohio App.3d 110, 574 N.E.2d 1118 (1980) (per curiam), in support of its claim that these factors do not preclude it from establishing that it had an insurable interest in the property. In *Asmaro*, the Ohio Court of Appeals addressed whether Asmaro, Inc., which owned a business operated in a building destroyed by fire, had an insurable interest in the building. *See id.* at 1120. The court held that Alaa Asmaro, the owner of the building and the sole stockholder of Asmaro, Inc., although he had an insurable interest, could not recover because he was not the named insured on the policy. Asmaro, Inc., the named insured, was held to have an insurable interest, even though it did not have a property interest, on the basis of its economic relationship to the property. *See id.* at 1121. The court concluded that Asmaro, Inc., had an insurable interest in the building because its business was a neighborhood grocery store, dependent on walk-in customers, that would suffer a loss if it were forced to relocate by damage to the building. *See id.* Thus, the court found an insurable interest based on the fact that the location of the building was integral to the success of the business.

■ We agree with the *Asmaro* court's reasoning that where economic loss to a tenant is closely tied to the unique traits of a particular property, it can form the basis for an insurable interest. In this case, Technical Land argues that its insurable interest derives from the fact it was created to operate the studio housed in the insured property and derive profits therefrom, and that it could not do so as a result of the water damage to the building.[20] There was evidence presented to the trial court that the studio at 1631 Kalorama Road was unique to the Washington metropolitan area, and that Technical Land

19. Technical Land also argues that Firemen's Insurance is estopped from denying insurance coverage because, at the time it procured the insurance, Technical Land reasonably believed it had a valid deed to the property and fully disclosed the title dispute to Firemen's Insurance. *See McGehee v. Farmers Ins. Co.*, 734 F.2d 1422, 1424–25 (10th Cir.1984) (insurer estopped from denying insurable interest of insured's son where insured father fully disclosed that he held title to the property, but the son lived in the home at the time he procured the insurance); *cf. Edmister*, 412 F.2d at 355–56 (refusing to find an insurable interest where former property owner misled insurance company regarding state of title). This claim is unavailing. At the time Firemen's Insurance insured the property, Technical Land *had* a valid Marshal's deed. Moreover, while Technical Land may have disclosed the title dispute when it obtained coverage, it failed to disclose the subsequent decision of the Bankruptcy Court declaring the Marshal's Deed invalid.

20. Technical Land claims that its business was impaired as a result of water damage to the building and to Techniarts' television production equipment housed in the building. The trial court found that the "Firemen's policy did not insure against lost income or damaged equipment." Technical Land has not appealed that finding of the trial court. We do not understand it to be asserting a claim for lost profits or damaged equipment, however, but for damage to the property, based on its economic, business-related interest in the building. The scope of coverage under the contract of insurance has not been briefed before this court and is not before us. *See supra* note 10. In this appeal we address only whether the nature of Technical Land's relationship to the insured building constitutes an insurable interest.

suffered economic loss due to its inability to relocate to another site with similar facilities in time to perform its contractual obligations. The matter is complicated, however, by the fact that appellant did not make the *Asmaro* argument to the trial court. Indeed, Technical Land did not make this precise argument in its brief on appeal, but raised it for the first time at oral argument.[21] Although claims not raised in the trial court will not ordinarily be considered on appeal, *see D.D. v. M.T.,* 550 A.2d 37, 48 (D.C.1988) (citing *Miller v. Avirom,* 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967)), we distinguish between claims and arguments in support of a claim, *see Mills v. Cooter,* 647 A.2d 1118, 1123 n. 12 (D.C.1994) (noting that parties are not limited to precise arguments made in the trial court). Here, Technical Land did claim before the trial court that it had an insurable interest and argued that it had a "reasonable expectation, based upon a real or legal right, of benefit to be derived from the continued existence of the property and of loss or liability from its destruction." *Anderson,* 397 N.W.2d at 418 (quoting *Ben–Hur Mfg. Co. v. Firemen's Ins. Co.,* 18 Wis.2d 259, 118 N.W.2d 159, 161–62 (1962)). We are therefore satisfied that the point has been adequately preserved for appellate review.

As the trial court noted, "there is no question that Technical Land lost income because of its inability to use the property during the time it was damaged." Although we cannot say the trial court erred in not making factual findings concerning the alleged uniqueness of the property in question to Technical Land's business and in finding that Technical Land had no insurable interest in 1631 Kalorama Road based on the precise arguments made to it, we remand the case for the trial court's consideration of the facts in light of the

claimed uniqueness of the property and the relationship between Technical Land's loss and the property's unique traits.[22] Accordingly, the judgment in favor of Firemen's Insurance is

*Reversed and remanded.*

property. We disagree with that reading of *Asmaro's* holding. See *supra* note 18.

---

21. Technical Land cited *Asmaro* in its brief, but argued that *Asmaro* stands for the proposition that an entity, like Technical Land, affiliated with an individual or organization with a property right, such as TVII, holds an insurable interest if it has a financial stake in the

22. The trial court might also need to rule on the issue of coverage. See *supra* notes 10, 20.