This is an appeal from an August 14, 1998 opinion and judgment entry of the Lucas County Court of Common Pleas in which the trial court granted summary judgment to appellee, Auto-Owners Mutual Insurance Company ("Auto-Owners"), on claims brought by appellant, Dallas Jones, for more coverage from a home-owner's insurance policy and for bad faith and to appellee, Martineau, Miller, Bellg Agencies ("insurance agency"), on appellant's claim for negligence. Appellant has presented three assignments of error for consideration that are:
 "I. THE TRIAL COURT ERRED IN GRANTING AUTO-OWNERS SUMMARY JUDGMENT ON THE MEANING OF THE TERM `ACTUAL CASH VALUE' AND DENYING SUMMARY JUDGMENT TO THE PLAINTIFF ON THAT SAME ISSUE.
 "II. THE TRIAL COURT ERRED IN GRANTING AUTO-OWNERS SUMMARY JUDGMENT ON THE ISSUE OF BAD FAITH AND DENYING DALLAS JONES'S SUMMARY JUDGMENT ON THAT SAME ISSUE.
 "III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE MARTINEAU, MILLER, BELLIG [SIC] AGENCIES."
Before we review the facts and procedure in this case and address the assignments of error raised, we note that appellant filed a motion, pursuant to App.R. 9(E), to supplement the record with supplemental discovery responses from Auto-Owners that were not filed but were received by appellant's counsel by mail while this case was pending in the trial court. App.R. 9 governs what may be included in the record on appeal, and provides, in pertinent part:
 "The original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases."
We have carefully reviewed the record in this case and have found that the supplemental interrogatory responses in question were never filed in the trial court, and were never admitted as exhibits. The supplemental interrogatory responses were not considered by the trial court. The Supreme Court of Ohio has ruled that an appellate court "cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." Statev. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus. Accordingly, appellant's motion to supplement the record on appeal with the supplemental interrogatory responses is not well-taken and is denied.
The record shows that on August 11, 1997, appellant filed a complaint in the Lucas County Court of Common Pleas against Auto-Owners and the insurance agency that sold him a homeowners insurance policy. He alleged in the complaint that Auto-Owners issued him an insurance policy for a house he owned as investment rental property. The policy limits were $21,500.
On December 19, 1994, the rental house was destroyed by fire. Appellant submitted a claim to Auto-Owners for insurance. He alleged that Auto-Owners breached the insurance contract when it only paid him $5,000 of his $21,500 limits. He also alleged that Auto-Owners acted in bad faith by improperly applying its own policy language to charge him for the cost of debris removal and boarding up of the premises along with demolition costs.
In addition, appellant alleged that his insurance agency knew or should have known that he was relying upon the expertise of its agent to set an appropriate policy limit for coverage. He said the agency was negligent because it did not sell him enough coverage to meet the cost of repairing or replacing his rental home. He also argued that the insurance agency was negligent because he paid premiums for coverage that were more than two times the amount identified by Auto-Owners as the market value of his property. In effect, he was either overinsured for actual cash value, or underinsured for replacement cost.
Both Auto-Owners and the insurance agency denied appellant's allegations against them. On March 25, 1998, Auto-Owners filed a motion for summary judgment. The insurance agency also filed a motion for summary judgment on June 29, 1998.
Auto-Owners argued that it paid appellant the full amount he was owed under the terms of his policy. Auto-Owners acknowledged that the cost to repair or replace the rental house was $56,298.19. However, Auto-Owners said that since appellant chose not to rebuild the house, he was limited to the actual cash value of the house, which it defined as the market value of appellant's rental house just prior to loss. Auto-Owners said the market value of the house just prior to loss was $7,000. Auto-Owners said it paid a total amount of $7,000 for coverage because it paid the city of Toledo $2,000 for demolition and clean-up expense, and it paid the remaining $5,000 in cash to appellant. Finally, Auto-Owners said it did not act in bad faith because it had reasonable justification for its position on the meaning of the terms in the insurance policy.
The insurance agency argued in support of its motion for summary judgment that appellant was in the best position to know the market value of his property. The agency said appellant was aware of the condition of the neighborhood where the house was located, and knew about the coverage limit for his policy because he got yearly renewal statements from Auto-Owners. The agency argued that it has thousands of customers and that it does not have a duty to make yearly site inspections of its customer's property to be sure the coverage limits match the value of the property. The agency said the burden was on appellant to ask it to reevaluate his property value and policy limits.
Appellant filed memoranda in opposition to the motions for summary judgment filed by Auto-Owners and the insurance agency. Appellant also filed a cross-motion for summary judgment against Auto-Owners.
On August 14, 1998, the trial court filed an Opinion and Judgment Entry in which it granted summary judgment to Auto-Owners and the insurance agency. The trial court said:
 "The issue at dispute, the meaning of `actual cash value' has already been settled by the Sixth District. * * * Under similar facts the Court upheld the jury's finding that `actual cash value' meant value of the property immediately prior to the fire. * * * The Court in Brionez found that when the insured elects not to replace, the terms of the policy control, and construing identical policy provisions to the case at bar found that `actual cash value' means value prior to the fire." (Citations omitted).
The trial court found that Auto-Owners had paid the appropriate amount for coverage to appellant, and that it did not act in bad faith.
The trial court also ruled that the insurance agency did not have a duty to "keep accurate property values of all of their insured [sic] and to adequately maintain comparable coverage." Therefore, the trial court granted the insurance agency summary judgment on the negligence claims filed against it by appellant.
Appellant has now filed this appeal. He is challenging the summary judgments granted to Auto-Owners and to the insurance agency, and is arguing that he was entitled to summary judgment.
In support of his first assignment of error, appellant argues that the trial court erred when it ruled that the meaning of the term "actual cash value" is market value prior to a loss. Appellant says the terms of the insurance policy show that the meaning of actual cash value is replacement cost minus depreciation. Appellant points to one line found in the policy that says: "Actual cash value includes deduction for depreciation." In the alternative, appellant argues that there are two acceptable definitions of actual cash value, (market value prior to loss or replacement cost minus depreciation) and that the failure of Auto Owners to clearly specify which definition applies in its policy created an ambiguity, which must be construed in favor of the insured, appellant.
Auto-Owners responds that the line from the policy appellant is relying upon to support his argument that the policy defines actual cash value as replacement cost minus depreciation is found in an inapplicable portion of the insurance policy. Auto-Owners also argues that when existing law is applied to this case, it is clear the insurance policy is not ambiguous, and that actual cash value means market value prior to loss. Auto-Owners points to a previous decision from this court, Brionez v. Auto-Owners Ins. (Nov. 15, 1996), Sandusky App. No. S-95-049 unreported, and says the trial court correctly construed the ruling from that case to establish the definition of actual cash value as market value prior to loss when an insured chooses not to rebuild or replace a damaged structure.
Auto-Owners is correct that the one line quoted by appellant as support for his argument that actual cash value means replacement cost minus depreciation is in a portion of the policy that does not apply to the factual situation in this case. The quoted line must be viewed in context. The entire section in which the line is found provides:
 "1. Loss to the following types of property will be settled at the actual cash value of the damaged property at the time of loss. Actual cash value includes deduction for depreciation.
"Personal property.
"Structures that are not buildings.
 "Antennas, carpeting, awnings, domestic appliances and outdoor equipment, all whether or not attached to buildings."
While we can understand appellant's desire to apply the "definition" of actual cash value found in this section to his situation, we find that the section, by its own terms, applies to only very limited types of claims, and does not apply to a dwelling.
We do, however, find merit to appellant's argument that an ambiguity exists regarding the meaning of the term actual cash value. In 1989, this court said: "Actual cash value is established by one of two methods in Ohio: market value of the property at the time of loss, or the cost of repairs minus depreciation, if any." Asmaro v. Jefferson Ins. Co. of New York
(1989), 62 Ohio App.3d 110, 115. In a subsequent case, this court concluded that because there were two different acceptable definitions for the term actual cash value, a question of fact existed, which could be decided by a jury. Brionez v. Auto-OwnersIns. (Nov. 15, 1996), Sandusky App. No. S-95-049, unreported. We now hold that we were in error in Brionez v. Auto-Owners Ins. when we concluded that a question of fact was created by the existence of two acceptable definitions for actual cash value. Instead, we should have applied the rule of construction that: "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." Kingv. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus.
The Supreme Court of Ohio has said:
 "The mere absence of a definition in an insurance contract does not make the meaning of the term ambiguous. `If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.' Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322. A court must give undefined words used in an insurance contract their plain and ordinary meaning. Miller v. Marrocco
(1986), 28 Ohio St.3d 438, 439. Here, the term `employee' is not defined, but does have a plain and ordinary meaning. It is, therefore, unnecessary and impermissible for a court to resort to construction of that language. Karabin v. State Auto. Mut. Ins. Co. (1984), 10 Ohio St.3d 163, 166-167. Thus, the interpretation of this insurance contract is a matter of law. Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo. Ohio Bell Tel. Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147." Nationwide Mutl. Fire Ins. Co. v. Guman Brothers Farm (1995), 73 Ohio St.3d 107, 108.
In this case, as we have already established, there is not just one plain and ordinary meaning for the term actual cash value, there are two. Auto-Owners did not specify which definition it was following for the term actual cash value when it drafted its policy. Therefore, an ambiguity exists regarding which accepted definition of the term applies, and the ambiguity must be settled in favor of the insured. King v. Nationwide Ins. Co., Ohio St.3d at 208, syllabus. Accordingly, the trial court erred when it granted Auto-Owners summary judgment after ruling that the meaning of actual cash value, as a matter of law, is market value prior to a loss. Appellant is correct that he is entitled to recover payment under his insurance policy using replacement cost minus depreciation as the method for determining actual cash value.
This court conducts a de novo review of summary judgment cases. If there are no genuine issues of material fact in dispute and it is clear as a matter of law that one party is entitled to summary judgment even when the facts are construed most favorably to the other party, summary judgment can be granted by this court.
In this case, appellant presented unrefuted evidence in support of his own motion for summary judgment that the figure that applies, when using replacement cost minus depreciation as the method for reaching actual cash value, is $31,518.35. Since appellant's policy limits were $21,500 at the time his loss occurred, appellant is limited to recovery of the full policy limits. Appellant is granted summary judgment on his claim for coverage and Auto-Owners is ordered to pay appellant the actual cash value of his house, up to the amount of his policy limits, $21,500. Appellant's first assignment of error is well-taken.
In support of his second assignment of error, appellant argues that Auto-Owners acted in bad faith in settling his claim. First, he argues that Auto-Owners had no reasonable justification for unilaterally deciding actual cash value was market value just prior to loss, since he believes the policy language supports only his view, that actual cash value is replacement cost minus depreciation.
Next he argues that Auto-Owners breached its contract with him when it deducted costs for debris removal and boarding-up from the amount it paid him for his claim. Appellant says that the plain meaning of the language included in the insurance policy regarding payment for these costs is that the cost will be borne by the insurance company, and will not be deducted from the benefits paid to the insured.
Finally, appellant argues that the trial court was wrong when it said the provisions found in R.C. 3929.86 gave Auto-Owners reasonable justification for its assessment of the assignment of the costs in question to appellant. Appellant says the statute in question is only applicable when the full amount of the policy limits is paid. Since Auto-Owners did not pay appellant the policy limits, appellant argues, Auto-Owners may not rely upon these statutory provisions to set off the cost for debris removal and boarding up of the property from the amount it pays him for actual cash value of his property.
Auto-Owners argues that it had reasonable justification for the positions it took regarding the method of determining actual cash value and regarding the assessment of responsibility for paying costs for debris removal and boarding up of the fire-damaged property. Auto-Owners reiterates its arguments from the first assignment of error that appellant has incorrectly construed the policy provisions in an attempt to support his argument that actual cash value is equivalent to replacement costs minus depreciation.
Auto-Owners also argues that a dispute between it and appellant regarding the allocation of responsibility for debris removal and boarding up costs is not evidence of bad faith. Auto-Owners points to a line in the policy as reasonable justification for its position in the dispute. The line from the policy reads: "Payments under this coverage reduce the amount of insurance applying to the damaged property." Finally, Auto-Owners argues that it was complying with the requirements found in R.C. 3929.86 when it made a deposit with the city of Toledo to cover demolition costs.
The Supreme Court of Ohio has ruled that an insurer acts in bad faith in processing the claim of an insured if there is no reasonable justification for the decisions made by the insurer regarding the payment or denial of a claim. Zoppo v. HomesteadIns. Co. (Dec. 30, 1994), 71 Ohio St.3d 552, syllabus. As previously noted, Auto-Owners was relying upon an earlier decision from this court, Brionez v. Auto-Owners Ins. (Nov. 15, 1996), Sandusky App. No. S-95-049, unreported, to support its argument that actual cash value is defined as market value just prior to loss.
In Brionez v. Auto-Owners Ins. this court erroneously ruled that because there were two acceptable definitions for actual cash value, a question of fact existed that could be decided by a jury.Id. In that case, the jury decided in favor of the definition that actual cash value is market value just prior to loss. While the ruling in Brionez did not establish as a matter of law that the definition of actual cash value is market value prior to loss, it did create a basis for Auto-Owners to reasonably argue that definition should be applied, through the ruling that a question of what definition should be used was a question of fact. Accordingly, Auto-Owners had some reasonable justification for its interpretation of the meaning of the term actual cash value when it processed appellant's claim for coverage under his policy in this case.
The second argument relating to bad faith stems from a dispute over whether Auto-Owners had reasonable justification for its decision to reduce the payment it made to appellant for the actual cash value of his home by $2,000, because it paid that amount to the city of Toledo for debris removal and boarding up costs after the fire damaged appellant's rental home. As we previously noted, appellant argues that Auto-Owners could not set off the costs in question from its payment to him for actual cash value unless it paid him his full policy limits. Auto-Owners says a line from its policy and the provisions of R.C. 3929.86 provide reasonable justification for its position. The trial court agreed with appellant's interpretation of the policy language and the statute, but found that Auto-Owners had reasonable justification for its interpretation of the policy language and the statute.
The policy language in dispute provides:
 "`We', `us' and `our' mean the Company providing this insurance.
"* * *
"ADDITIONAL COVERAGES
"1. Debris Removal
 "We will pay reasonable expenses you incur to remove debris of covered property following a loss from a peril we insure against. "If the damage to that property and the cost of debris removal is more than our limit of liability for the property, we will pay no more than that limit.
"* * *
"4. Necessary Repairs After Loss
 "We will pay the reasonable cost of necessary repairs made solely to protect covered property from other damage following a loss from a peril we insure against. Payments under this coverage reduce the amount of insurance applying to the damaged property."
R.C. 3929.86 is titled: "Certain fire loss claims not to be paid without certificate from county treasurer and compliance with municipal requirements." The provisions of the statute establish procedures for municipal corporations and townships to collect the cost for unpaid taxes, assessments, penalties, charges and costs, including those charged for removal, repair or securing of buildings or structures that are damaged by fire, from the insurance proceeds to be paid to the property owner. R.C.3929.86 states, in pertinent part:
 "(F) Nothing in this section shall be construed to make an insurance company liable for any amount in excess of proceeds payable under its insurance policy or for any other act performed pursuant to this section, or to make a municipal corporation, township, or public official an insured under a policy of insurance, or to create an obligation to pay delinquent property taxes or unpaid removal liens or expenses other than as provided in this section."
We disagree with the conclusion of the trial court that the above-quoted provisions provided Auto-Owners with reasonable justification for its position that it could set off the costs of boarding up and debris removal from the $7,000 market value it assigned to appellant's rental home. The provisions in question clearly provide that an insurer may set off costs for debris removal or boarding up costs only if the full policy limits are already paid to the insured on the basis of another section of coverage in the insurance policy. Auto-Owners knew the policy limits were $21,500 in this case, and argued that appellant was only entitled to $7,000 as actual cash value for his rental home based upon its contention that actual cash value is measured as market value just prior to loss. Auto-Owners could not, in good faith, conclude that it could limit the payments to appellant to a total of $7,000, since the policy limits were not exhausted by the actual cash value of the house and appellant was entitled, under the terms of the policy, to separate payments for his coverage for debris removal and necessary repairs after loss.
Accordingly, appellant's second assignment of error is well-taken to the extent the trial court should not have granted summary judgment to Auto-Owners on the bad faith claim brought by appellant on the dispute over the allocation of responsibility for bearing the cost of debris removal and boarding up costs. Furthermore, we find that there are no material questions of fact that remain in dispute and when the facts are construed in a light most favorable to Auto-Owners, reasonable minds could only conclude that appellant is entitled to summary judgment on his bad faith claim as to the question of liability. Damages stemming from the bad faith must be determined on remand.
In support of his third assignment of error, appellant argues that the insurance agency that sold him insurance on his rental home had a statutory duty, pursuant to R.C. 3929.25, or a common law duty based upon the elements of negligence, to make annual reviews of his insurance needs to ensure that he had the right amount of insurance coverage. He says that after he submitted his claim for coverage, he learned that he was greatly underinsured for replacement costs and was greatly overinsured for actual cash value. He says the insurance agency should have known that he was relying upon the expertise of its agent in setting the amount of insurance coverage he needed, and that the insurance agency had a duty to be sure he had appropriate levels of coverage. He says the facts here show the insurance agency breached its duty and he concludes that the trial court erred when it granted the insurance agency summary judgment.
The insurance agency responds that it has no duty under Ohio law to make annual reviews of the property of its customers in order to see if coverage amounts should be adjusted. The insurance agency argues that appellant had the burden to contact it to ask for a review of his insurance needs in order to ensure his coverage amounts were appropriate.
R.C. 3929.25 provides:
 "A person, company, or association insuring any building or structure against loss or damage by fire or lightning shall have such building or structure examined by his or its agent, and a full description thereof made, and its insurable value fixed, by such agent. In the absence of any change increasing the risk without the consent of the insurers, and in the absence of intentional fraud on the part of the insured, in the case of total loss the whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall be paid. However, if the policy of insurance requires actual repair or replacement of the building or structure to be completed in order for the policyholder to be paid the cost of such repair or replacement, without deduction for depreciation or obsolescence, up to the limits of the policy, then the amount to be paid shall be as prescribed by the policy.
 "The cellar and foundation walls shall not be considered a part of such building or structure in settling losses, despite any contrary provisions in the application or policy."
The provisions above quoted do create a duty on the part of an insurance agent to inspect the property and to assign an insurable value at the time insurance coverage is initially sold to a property owner. However, nothing in the provisions creates an ongoing duty for the agent to make yearly inspections of the property to ensure the value of the property has not changed.
Likewise, we find no support for the argument that such a duty exists under common law. Appellant has not presented any facts to support his assertion that the insurance agency should have known he was relying upon it to ensure that his insurance coverage was periodically changed to reflect any change in the value of his property. We agree with the insurance agency that appellant was in the best position to know if the value of his property rose or fell and that it would only have an obligation to reinspect his property and to set new insurance values if he contacted them to request the reevaluation. Accordingly, appellant's third assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas is reversed in part and affirmed in part. Appellant is ordered to pay one-third of the court costs of this appeal, and Auto-Owners is ordered to pay two-thirds of the court costs of this appeal. This case is remanded for further proceedings consistent with this opinion.
REVERSED IN PART AND AFFIRMED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.___ _______________________________ JUDGE
Melvin L. Resnick, J._____ _______________________________ JUDGE
James R. Sherck, J._______ _______________________________ JUDGE CONCUR.