OPINION
Commercial Trailer Company, defendant-appellant ("Commercial"), appeals the December 4, 1997 judgment of the Franklin County Court of Common Pleas journalizing the trial court's verdict in favor of plaintiffs-appellees, Mayflower Transit, Inc. ("Mayflower"), St. Paul Fire and Marine Insurance Company ("St. Paul"), and Reliance National Indemnity Company ("Reliance"). Appellees have also filed a consolidated appeal in which they appeal the trial court's September 13, 1999 judgment denying them prejudgment interest.
Buckeye Storage Company ("Buckeye") is a motor carriage transportation service located in Mansfield, Ohio. Buckeye had an agency agreement with Mayflower to use the Mayflower name. In late 1994, Commercial, located in Columbus, Ohio, refurbished a moving trailer owned by Buckeye that had been damaged in a fire. The repairs included replacing the ceiling of the trailer in which recessed dome lighting had originally been installed. Buckeye authorized Commercial to repair the lighting and wiring in the trailer, but did not specify the type of lights it wanted installed. Commercial installed four spotlights in the four corners of the interior of the moving trailer. On November 22, 1994, a Buckeye employee, Phillip Hout, picked up the trailer in Columbus and drove it back to Mansfield. After realizing that the trailer lights did not work properly, Buckeye had a hook-up line repaired so the interior trailer lights could be activated by a toggle switch located inside the truck cab.
Mayflower, through its agent Buckeye, had previously contracted to transport James and Patricia Miller's property from Duluth, Minnesota, to Mansfield, Ohio. The Millers purchased an insurance contract from Mayflower in which Mayflower agreed to pay the Millers up to $185,000 for the replacement value for any loss, which may occur to the Millers' property while in transit. Mayflower was self-insured up to $100,000 and had an insurance contract with St. Paul to provide excess coverage for the actual cash value of losses beyond the $100,000 that Mayflower may be required to pay the Millers. Reliance provided an insurance policy to Buckeye for the fair market value of any damages to Buckeye's moving trailer.
On November 25, 1994, Hout departed with the trailer for Duluth. Hout arrived at the Millers' residence in Duluth and packed the Millers' property into the moving trailer, which he finally completed loading the evening of November 30, 1994. Hout and other individuals packed the trailer from the floor to the ceiling, wall-to-wall, and from the front to the back. Some moving tarps were placed between the ceiling of the trailer and the property in order to stabilize it. On December 1, 1994, while transporting the Millers' property from Duluth to Mansfield, Buckeye's moving trailer caught fire, destroying nearly all of the contents of the trailer. Reliance determined the trailer to be a complete loss and paid Buckeye $11,500 for the fair market of the trailer. In April 1996, Mayflower paid the Millers $185,000 for the replacement value of the destroyed property. St. Paul then paid $85,000 to Mayflower for payment in excess of $100,000 that Mayflower paid to the Millers.
On November 8, 1996, appellees filed an action against Commercial claiming that Commercial was negligent in the installation, design, and configuration of the lighting system and in failing to warn Buckeye that placing combustibles in contact with the lights while they were illuminated was a fire hazard. Commercial asserted that the fire was caused by the negligence of Buckeye placing combustibles in contact with one of the lights and then failing to turn off the lights. The parties stipulated that appellees were responsible for any comparative fault on behalf of Buckeye. Reliance was subrogated to any claims that Buckeye may have had against Commercial for the loss of the moving trailer up to $11,500. Mayflower was subrogated to the Millers' loss of contents up to a value of $100,000. St. Paul was subrogated (via Mayflower) to the Millers' claims against Commercial for the loss of property up to $85,000.
A bench trial was held from November 17, 1997 to November 19, 1997. At the conclusion of the trial, the court found in favor of appellees. On December 4, 1997, judgment was granted in favor of Mayflower against Commercial for $100,000. St. Paul was also granted judgment against Commercial for $85,000, and Reliance was granted judgment against Commercial for $11,500. The trial court also found that Buckeye was not comparatively negligent. Also, on December 4, 1997, appellants filed a motion for findings of fact and conclusions of law, which was opposed by appellees because the motion was not timely filed. On December 12, 1997, appellees filed a motion for prejudgment interest pursuant to R.C. 1343.03(A) and (C).
On January 5, 1998, appellant filed a notice of appeal. On January 20, 1998, appellees moved for assessment of costs. This court dismissed appellant's appeal in Mayflower Transit, Inc.v. Commercial Trailer Co. (Feb. 2, 1998), Franklin App. No. 98AP-7, unreported, because the judgment from which it appealed was not a final, appealable order, as the motion for findings of fact and conclusions of law was still pending.
On April 24, 1998, the trial court denied appellant's motion for findings of fact and conclusions of law. Thereafter, the previous appeal was redocketed; however, we again dismissed the appeal for lack of a final, appealable order because the motions for prejudgment interest and costs were still pending. See Mayflower Transit, Inc. v. Commercial Trailer Co. (Feb. 4, 1999), Franklin App. No. 98AP-607, unreported.
Upon remand, appellees filed a motion to clarify the record on February 17, 1999. Appellees claimed that on appeal, appellant was attempting to rely upon an admission made by appellees. Appellees asserted that they had moved the trial court to withdraw the admission during trial and that the trial court had allowed the withdrawal. Commercial also renewed its motion for findings of fact and conclusions of law on February 19, 1999. On September 13, 1999, the trial court issued entries stating findings of fact and conclusions of law, awarding costs, finding that it had permitted appellees' motion to withdraw the admissions during the course of the trial, and denying prejudgment interest. Appellees appealed the judgment denying them prejudgment interest, and appellant appealed the underlying judgment, the findings of fact and conclusions of law, and the court's orders on various trial motions. We consolidated the appeals. Appellant asserts the following ten assignments of error:
 I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF PLAINTIFFS' CASE IN CHIEF.
 II. THE TRIAL COURT ERRED BY ENTERING ITS VERDICT ON BEHALF OF THE PLAINTIFFS WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED BY ENTERING ITS VERDICT THAT PLAINTIFFS' AGENT AND/OR SUBROGOR WAS NOT COMPARATIVELY NEGLIGENT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 IV. THE TRIAL COURT ERRED BY FAILING TO ADMIT DEFENDANT'S EXHIBITS.
 V. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO EXCLUDE THE EXPERT TESTIMONY OF MR. PAUL HANSON REGARDING THE STANDARD OF CARE FOR INTERIOR LIGHTING INSTALLATION IN MOVING VANS BECAUSE MR. HANSON WAS NOT QUALIFIED TO RENDER SUCH TESTIMONY.
 VI. THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING PLAINTIFFS TO WITHDRAW ADMISSIONS THEY HAD MADE.
 VII. THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S OBJECTIONS TO THE SPECULATIVE EXPERT TESTIMONY OF MR. KEITH TARBOX THAT THE INTERIOR LIGHTS OF THE TRAILER WERE "POSSIBLY" EXTINGUISHED AT THE TIME THE FIRE STARTED.
 VIII. THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING MR. JIM MILLER TO OFFER TESTIMONY ON THE VALUE OF THE LOST PROPERTY.
 IX. THE TRIAL COURT ERRED IN FINDING APPELLANT NEGLIGENT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 X. THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANT'S NEGLIGENCE WAS THE PROXIMATE CAUSE OF THE FIRE.
We will address appellant's fourth and sixth assignments of error first, because our determination of those issues will affect our disposition of the other assignments of error. Appellant argues in its fourth assignment of error that the trial court erred in failing to admit Exhibit K. Appellant asserts in its sixth assignment of error that the trial court erred in permitting appellees to withdraw the admissions that it made pursuant to Civ.R. 36. Civ.R. 36 provides that any matter admitted under the rule is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. The court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Civ.R. 36(B).
Appellant's Exhibit K contained appellees' answers to appellant's interrogatories, request for production of documents, and requests for admissions. Appellees specifically admitted that: (1) Buckeye's employees failed to turn off the interior lights after loading the moving trailer in Minnesota; (2) Buckeye's employees failed to turn off the interior lights before departing the next morning; and (3) the fire in the trailer would not have started if Buckeye's employees would have extinguished the interior lights. Appellees never filed amended answers to the requests for admissions or moved to withdraw the admissions before trial.
During his deposition six months before trial, Hout, who had helped move the Millers for Buckeye, testified that he extinguished the interior lights after packing the items in the trailer. At trial, Hout again testified he turned off the lights in the trailer. Despite these two occasions, that Hout's testimony contradicted the admissions, appellant did not mention nor was there an attempt to introduce the admissions in Exhibit K until the testimony of appellees' expert witness, Paul Hansen. When appellant attempted to introduce Exhibit K and present Hansen with a hypothetical question in which it was assumed that Hout had left the interior lights on, appellees' counsel, Mr. Donald, objected to the introduction of Exhibit K. The issue of Exhibit K did not arise again until closing arguments, during which appellees' counsel argued to the court that the evidence and testimony established at trial contradicted the admissions and that he made a mistake by not supplementing his answers to the request for admissions. Appellant's counsel argued during closing arguments that the admissions made by appellees in Exhibit K were conclusively established pursuant to Civ.R. 36. The trial court made no indication in its oral pronouncement or in its original judgment that it had allowed appellees to withdraw their admissions. It was not until the September 13, 1999 entry, in response to appellees' motion to clarify, that the trial court acknowledged that it had allowed appellees to amend their admissions during the trial.
Appellant contends that the trial court erred in allowing appellees to amend their admissions because during the course of the trial they never specifically moved for leave to amend or withdraw their admissions pursuant to Civ.R. 36. However, Civ.R. 36(B) does not require that a written motion be filed and does not specify when such motion must be made. Balsonv. Dodds (1980), 62 Ohio St.2d 287, fn. 2. Further, the Supreme Court of Ohio held in Balson that the trial court reasonably found that, by contesting the truth of the Civ.R. 36(A) admissions, for the purposes of summary judgment, appellee satisfied the requirement of Civ.R. 36(B) that the party move the trial court to withdraw or amend the admissions. Id. The court in Balson also noted that Civ.R. 36 leaves matters regarding withdrawal of admissions to the sound discretion of the trial court. Id. Thus, absent a showing that the court's attitude was unreasonable, arbitrary, or unconscionable, no error will be found by a reviewing court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Finally, the court in Balson found that the court may permit the withdrawal if it will aid in presenting the merits of the case and the party who obtained the admission fails to satisfy the court that withdrawal will prejudice him in maintaining his action.Balson, at paragraph two of the syllabus. This provision emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice.
In the present case, immediately upon appellant's attempting to introduce the admission into evidence, appellees' counsel objected to its introduction, pointing out that Hout had already testified twice that he had turned out the lights. Again, during closing arguments, appellees' counsel stated that he made a mistake in failing to withdraw the admissions based on Hout's earlier deposition testimony. We find that it was within the trial court's discretion to construe these protests by appellees' counsel as motions to withdraw the previous admissions. See Nelsonv. Tipton (Nov 18, 1999), Franklin App. No. 99AP-277, unreported (despite appellees' failure to actually move to amend their admissions at any point before or during trial, an actual motion is not required by Civ.R. 36[B]); see, also, Nursing Staff ofCincinnati, Inc. v. Sherman (1984), 13 Ohio App.3d 328, 330 (trial court did not err in allowing a party at trial to contest a fact that was subject to a prior admission when no formal request to amend/withdraw had been made and where the trial court finds the best interest of justice is served and no substantial prejudice results); Hoffman v. Mayse (Sept. 20, 1995), Wayne App. No. 95-CA-0006, unreported.
More importantly, the record is devoid of any showing that appellant was prejudiced by the trial court allowing the withdrawal of the admissions. Appellant's counsel was given a full opportunity to question Hout on this issue six months before trial at the deposition, as well as during the course of the trial. Because of this deposition testimony six months prior, appellant had full notice of appellees' position on this issue; therefore, they could not have been surprised at trial and could not have blindly relied upon the representation in the admission. SeeNelson, supra (despite appellees' failure to move to amend their admissions, the trial court did not err in allowing amendment because appellants had sufficient notice two months prior to trial that appellees had taken a contrary position to certain admissions); Tabor v. Westfield Companies (Feb 27, 1998), Gallia App. No. 97CA05, unreported (despite appellee's failure to file a motion to withdraw, the trial court did not err in allowing withdrawal of admission when appellant had notice that appellee had contested the issue before the suit).
It is telling that in neither its counsel's statements during trial nor in its appellate brief did appellant even allege that it was prejudiced in any way. Appellant has not made any allegation that its strategies and tactics would have changed. In addition, appellant's failure to introduce the admission until the examination of appellees' expert, who was the fourteenth witness of fifteen total witnesses to testify, demonstrates that appellant's presentation of the case was not affected. We also note that appellant failed to object to Hout's testimony at trial that he turned off the lights. See Nelson, supra (appellants' failure to object to testimony that could be said to contradict an admission waived the issue for appellate purposes). As such, no prejudice was shown, and the trial court did not abuse its discretion by permitting the apparent withdrawal. Because we have found that the trial court did not err in allowing appellees to withdraw their admissions, whether the trial court actually admitted Exhibit K is moot. Therefore, appellant's sixth assignment of error is overruled, and appellant's fourth assignment of error is moot.
Appellant argues in its fifth assignment of error that the trial court erred in failing to exclude the expert testimony of Paul Hansen. The trial court possesses considerable discretion in deciding the competency of an expert and the admissibility of expert testimony. Nichols v. Hanzel (1996), 110 Ohio App.3d 591,597 (competency); Colboch v. Uniroyal Tire Co., Inc. (1996),108 Ohio App.3d 448, 461 (admissibility). Thus, a reviewing court reviews the admission of expert testimony under an abuse of discretion standard. State v. Awkal (1996), 76 Ohio St.3d 324,331. Further, a trial court's discretion is guided by the requirements of Evid.R. 702, which must be satisfied before an expert's testimony is admissible. State v. Bragg (June 11, 1999), Ross App. No. 98CA2444, unreported.
A witness will qualify as an expert if he demonstrates some special knowledge on the particular subject acquired either by study of recognized authorities or by practical experience.State Auto Mutual Ins. Co. v. Chrysler Corp. (1973), 36 Ohio St.2d 151,160. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge she possesses will aid the trier-of-fact in performing its fact-finding function." State v. Baston (1999), 85 Ohio St.3d 418,423, citing State v. D'Ambrosio (1993), 67 Ohio St.3d 185,616 N.E.2d 909. An expert qualified in one subject, however, may not be qualified to testify on another related subject. Campbellv. The Daimler Group, Inc. (1996), 115 Ohio App.3d 783, 793.
Appellant claims that Hansen was not qualified to render the following opinion:
 Q. Do you have an opinion as to — as far as, do you have an opinion as far as the lighting system itself, was there anything — and I am going to use the word "electrical" that may have had a cause of this fire?
A. Yes, there is.
Q. Okay. Go ahead and explain.
 A. Okay. Well, basically, it's my opinion that — it's my — I said, in so many words, in the conclusions, but that the installation of these fixtures in the trailer was a dangerous, defective condition for its intended use, and that it left * * * the refurbisher in [control of] this dangerous condition.
Appellant argues that Hansen was not qualified to testify as an expert because he testified that he had no experience working for a moving company or designing electrical systems for moving trailers. However, Evid.R. 702 does not require that the witness be a specialist in a particular area; the witness need only have knowledge outside the common ordinary understanding of the jurors that was gained by special education or training. The record reveals that Hansen is an electrical investigator and forensic scientist; examines fires and electrical accidents as a part of his employment; is a registered professional engineer in two states; teaches seminars on avoidance and origins of electrical fires; and has experience designing electrical systems. The testimony given by Hansen was also based on his own examination of the Mayflower trailer. His testimony was given in accordance with his training and experience. Simply because Hansen does not concentrate his career in the very specific field of electrical systems for moving trailers or avoidance of electrical fires in moving trailers does not mean that he is not qualified to testify as an expert under the Rules of Evidence. As the Supreme Court has stated, the witness need not be "the best witness" on the particular subject to qualify as an expert. Scott v. Yates
(1994), 71 Ohio St.3d 219, 221; Alexander v. Mt. Carmel MedicalCenter (1978), 56 Ohio St.2d 155, 159. The record reveals that Hansen had the requisite expertise to render an expert opinion as to whether a particular lighting system was a dangerous condition in the context of how the system was to be used. Therefore, we find that the trial court did not abuse its discretion in denying appellant's motion to strike the testimony of Hansen. Appellant's fifth assignment of error is overruled.
Appellant argues in its seventh assignment of error that the trial court abused its discretion in overruling appellant's objections to the expert testimony of Keith Tarbox. It is well-established that unless an expert expresses his or her opinion in terms of probability, the testimony will be excluded as speculative. Shumaker v. Oliver B. Cannon Sons, Inc. (1986),28 Ohio St.3d 367; see, also, Stinson v. England (1994), 69 Ohio St.3d 451, paragraph one of the syllabus. Further, the Ohio Supreme Court has found that an expert using the word "could" as an equivocation does not express an opinion to the requisite standard of probability and certainty. Id. A reviewing court reviews the admission of expert testimony under an abuse of discretion standard. Awkal, supra.
In the present case, appellant asserts that Tarbox's testimony, upon appellees' redirect examination, was not rendered to the requisite degree of probability. On appellees' redirect examination, Tarbox testified several times that within a reasonable scientific probability, the fire "could have" commenced at least twelve to twenty-four hours prior to departing and that it was "possible" that it commenced during the loading process. Although appellant claims that this testimony was speculative, Tarbox's unequivocal opinion was made certain in the following exchange:
 Q. So, let me rephrase this. Within a reasonable scientific probability, is it fair to say that you don't know when the fire may have started?
 A. No, I can't. I can't give you a time when this fire started.
Therefore, Tarbox clarified his opinion that to a reasonable scientific certainty he did not know when the fire actually started. This unequivocal testimony immediately followed the testimony in which he stated his opinions in terms of "possible" and "could." Tarbox again reiterated the same opinion, stating "I can't say with any certainty when the actual smoldering stage started." Tarbox's seemingly equivocal testimony using "possible" and "could" is, therefore, consistent with his overall opinion that he simply was unable to form an opinion as to when the actual smoldering began. We cannot say the trial court abused its discretion or that appellant was prejudiced. Further, as appellees pointed out, even if the trial court erred in admitting this testimony, appellant elicited testimony from Hansen that the fire could have started up to twelve hours before it was discovered. Thus, the trial court could have relied upon Hansen's testimony rather than Tarbox's testimony on this issue. Therefore, appellant's seventh assignment of error is overruled.
We will address appellant's first, second, eighth, and ninth assignments of error together, as they are related. Appellant argues in its first assignment of error that the trial court erred in overruling its motion for directed verdict at the close of appellees' case-in-chief. Appellant contends in its second assignment of error that the trial court's decision was against the manifest weight of the evidence. Appellant argues in its eighth assignment of error that the trial court erred in allowing Mr. Miller to testify as to the value of the lost property. Appellant asserts in its ninth assignment of error that the trial court's decision finding appellant negligent was against the manifest weight of the evidence.
Appellant relies upon the same argument for its first and second assignments of error. With regard to motions for directed verdict, such motions test the legal sufficiency of the evidence. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66,68. When considering a motion for a directed verdict, a court must construe the evidence most strongly in favor of the party against whom the motion is directed. Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284. A trial court considering a motion for directed verdict must not determine whether one version of the facts presented is more persuasive than another but, rather, whether the trier of fact could reach only one result under the theories of law presented in the complaint. Id. Where there is substantial competent evidence favoring the nonmoving party so that reasonable minds might reach different conclusions, the motion must be denied. Ramage v. Central Ohio Emergency Serv.,Inc. (1992), 64 Ohio St.3d 97, 109.
In determining whether a judgment was against the manifest weight in a civil claim, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court. SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. A reviewing court must be "guided by a presumption that the findings of the trier-of-fact were indeed correct" in a manifest weight inquiry.Id. at 80; see, also, Simon v. Lake Geauga Printing Co. (1982),69 Ohio St.2d 41. This deferential review is premised upon the fact that it was the trier of fact who had the best opportunity to view the witnesses, observe their demeanor, gestures and voice inflections and, ultimately, assess and evaluate their credibility. Seasons Coal, supra.
Appellant asserts that the trial court erred in its determinations regarding appellant's standard of care, appellant's duty to warn, and damages. With regard to appellant's standard of care, appellant claims that appellees provided no expert testimony that appellant failed to meet the standard of care in the design, installation, and configuration of the lighting system it installed in Buckeye's moving trailer. Appellees presented the expert testimony of Hansen with regard to appellant's standard of care. We have already found under appellant's fifth assignment of error that Hansen was qualified to render an expert opinion. Hansen testified that, in his opinion, the installation of the fixtures in the trailer was a dangerous, defective condition for their intended use. He also testified that appellant should have installed either dome lighting or a protective guard to protect materials from coming directly into contact with the hot spotlights. He testified that appellant should have known to do this, considering the standard in the moving industry is to stack objects from side-to-side and floor-to-ceiling and that appellant worked on moving trailers as a part of its business. Appellant points to the testimony of Lou Calberone, the former sales manager for appellant, who testified that the spot lights he normally sees in moving trailers do not usually have guards around them. He also stated that he believed that appellant did a reasonable, appropriate, and workmanlike job in installing the utility lights in Buckeye's moving trailer. He believed that any fire caused under these circumstances was the responsibility of the driver.
With regard to appellant's motion for directed verdict, we find that construing the evidence most strongly in favor of appellees, the testimony of Hansen provided sufficient evidence of appellant's standard of care in installing lights in Buckeye's moving trailer. Hansen's testimony was adequate to establish that appellant should have installed different lights or guards because it knew the vehicle was a moving trailer that would be packed tightly. Thus, there was substantial competent evidence favoring appellees so that reasonable minds might reach different conclusions on this issue. Therefore, the trial court did not err in overruling appellant's motion for directed verdict on this issue.
We also find that the trial court's decision on the issue of standard of care was not against the manifest weight of the evidence. After reviewing the testimony of each witness, weighing the evidence and all reasonable inferences, and considering the credibility of the two witnesses, we find that the trial court's judgment was supported by some competent, credible evidence. The trial court apparently found the testimony of Hansen more credible. The weight to be given the evidence and the credibility of the witnesses are primarily matters for the finder of fact to determine, and it is not the function of the appellate court to substitute its judgment for that of the factfinder.Seasons Coal, supra.
Appellant also claims that there was insufficient evidence as to appellant's duty to warn Buckeye of the propensities of the lighting system. However, as appellees point out, in the trial court's September 13, 1999 judgment, the only conclusion of law is:
 Commercial Trailer's negligence in the installation of the lighting system was the proximate cause of the fire that destroyed the belongings and the trailer. The amount of damages caused by this negligence was $196,500.00.
Although the trial court's oral pronouncement also mentions appellant's failure to warn, it is well-established that a trial court speaks only through its judgment entries, rather than by oral pronouncement. See Gaskins v. Shiplevy (1996), 76 Ohio St.3d 380,382; State v. King (1994), 70 Ohio St.3d 158, 162; Schenleyv. Kauth (1953), 160 Ohio St. 109, 113 (paragraph one of the syllabus). Appellate courts usually refrain from reviewing courtroom colloquies that are not carried over into a judgment entry. See Snouffer v. Snouffer (1993), 87 Ohio App.3d 89, 91. Thus, the trial court's judgment was controlling, and that judgment stated that its award was based solely on the negligent installation cause of action. Furthermore, the separate cause of action for negligent failure to warn would become moot, in that we have already found that the trial court did not err regarding the separate cause of action for negligent installation, design, and configuration. Such a finding would support the trial court's decision on its own, without any finding regarding the failure to warn cause of action. Therefore, we will not address this issue.
Appellant next asserts that appellees' evidence regarding the fair market value of the property damage was insufficient and that the trial court's determination on this issue was against the manifest weight of the evidence. We initially note that although the language of appellant's eighth assignment of error technically asserts only that the trial court erred in allowing Mr. Miller to testify as to the value of the loss, appellant concedes that Mr. Miller is permitted to testify as to the value of his own property. More specifically, appellant's argument under his eighth assignment of error is that Mr. Miller improperly testified as to the actual cash value of his property and not the fair market value or "value to the owner."
As a general rule, the measure of damages for lost, destroyed, or stolen property is the reasonable market value of the property immediately before it is lost, destroyed, or stolen.Maloney v. General Tire Sales (1973), 34 Ohio App.2d 177, 184. Fair market value is the value the article would bring if it were sold to a willing buyer from a willing seller in the open market at the time of loss. Bishop v. East Ohio Gas Co. (1944), 143 Ohio St. 541.
Although an expert is typically required to demonstrate the value of a loss, as an exception to the general rule, an owner is permitted to testify concerning the "value to the owner" without being qualified as an expert, because he or she is presumed to be familiar with it from having purchased or dealt with it. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, paragraph two of the syllabus, citing Id. Thus, when the market value of personal property cannot be feasibly ascertained, a court may resort to this more elastic standard. The "value to the owner" standard is more elastic because the court must attempt to take into account the value of the property to the owner by examining such factors as the age, condition, original cost, and replacement value of the items. Cooper v. Feeney (1986),34 Ohio App.3d 282.
In the present case, Mr. Miller testified that he arrived at his "fair market value" valuations by "diminish[ing] replacement cost by the amount of depreciation." The definition put forth by Mr. Miller for "fair market value" is one of two definitions used for "actual cash value." Asmaro v. Jefferson Ins.Co. of New York (1989), 62 Ohio App.3d 110, 115; Florea v.Nationwide Mut. Fire Ins. Co. (Jan. 28, 1983), Montgomery App. No. 7908, unreported. Mr. Miller made it clear by stating twice that he arrived at his sums using replacement cost minus depreciation. There was no evidence that he used the proper method to arrive at fair market value, which is the price in the open market at the time of the loss, or that he made any valuations based upon the "value to the owner." Therefore, Mr. Miller's evidence did not support a determination of the fair market value or the "value to the owner" with regard to the property loss. We would also note that adding to our difficulty in determining how Mr. Miller arrived at the property loss totals is that the value of some lost items contained in the notebooks comprising Appellees' Exhibit 10 seem to be based on pure replacement values without accounting for age or condition. Indeed, Mrs. Miller testified that for many items listed in those notebooks, she used replacement values only.
Appellees assert that even if Mr. Miller did not testify as to the fair market value of the destroyed property, Dennis Cuirej, an adjuster and appraiser for St. Paul, did testify as to the fair market value of the property. However, Cuirej did not testify as to the fair market value. He repeatedly stated that he was testifying as to replacement cost or actual cash value. The trial court specifically inquired on this issue:
 The Court: I have one question of them though. Is your term actual-cash value what others say is fair-market value, is that a term that your company uses in replacement of fair-market value?
 How do you define — how do you define actual-cash value?
 The witness: Actual-cash value, by normal insurance definitions is replacement cost, less depreciated line fashion, which is residual value * * *.
Appellant's counsel also asked appellant questions regarding this issue:
 Q. Actual-cash value is the value of an item to replace it. Cost, minus depreciation, correct?
A. Correct.
 Q. Fair-market value of that, is you can go out in an open market, and a willing buyer will pay a willing seller, correct?
 A. If — well, yes, if there is a market, a willing buyer will pay a willing seller.
 Q. And your evaluation was based on actual-cash value that you did at the time?
A. Yes.
Thus, it is clear that Cuirej did not testify as to the fair market value of the destroyed items but, rather, testified as to the replacement value and actual cash value. Therefore, we find there was insufficient evidence as to the fair market value of the destroyed property, and the trial court's decision on this issue was against the manifest weight of the evidence.
However, because appellees established the "damage" element of its negligence claim, but have failed to prove the amount of such damage, the issue of the fair market value of the loss will be remanded to the trial court for another hearing. We understand that arriving at the fair market value of thousands of items may be somewhat daunting and that the valuation of fair market value for some items may not be feasibly ascertained, in which place "value to the owner" might be more appropriate. However, we simply cannot determine from the record whether fair market valuations were used for those items for which such valuations may be established. Thus, because of this lack of evidence in the record, we cannot ignore the possibility, however remote, that when using fair market value or "value to the owner," instead of actual cash value or replacement value, the loss may be valued at less than $185,000. Therefore, we feel compelled to remand this issue back to the trial court for another hearing. Appellant's first and second assignments of error are sustained in part and overruled in part, appellant's eighth assignment of error is sustained, and appellant's ninth assignment of error is overruled.
Appellant's third and tenth assignments of error will be addressed together because they are related. Appellant argues in its third assignment of error that the trial court's determination that Buckeye was not comparatively negligent was against the manifest weight of the evidence. Appellant asserts in its tenth assignment of error that the trial court erred in concluding that appellant's negligence was the proximate cause of the fire and in not finding that Buckeye's comparative negligence was the proximate cause.
Under a comparative negligence analysis, a plaintiff may recover for injuries flowing from the negligence of a defendant, even if that plaintiff is negligent to a degree. The amount of a plaintiff's recovery, however, is adjusted by the degree of his own negligence. Hirschbach v. Cincinnati Gas Elec. Co. (1983),6 Ohio St.3d 206, 209. Pursuant to Ohio's comparative negligence law, a plaintiff may not recover any damages where the plaintiff's negligence exceeds the total negligence of the defendant or defendants. R.C. 2315.19(C). Appellant first asserts that appellees' admissions in Exhibit K demonstrate that Buckeye was comparatively negligent in failing to turn off the lights in the trailer after packing. However, we have already found that the trial court did not err in allowing appellees to withdraw their admission. Hout also testified in his deposition and at trial that he specifically remembered turning off the lights after packing the trailer. Thus, this argument is without merit.
Appellant also claims that Buckeye was comparatively negligent because it should have known that lightbulbs get hot, and the movers should not have packed objects against them. Although appellant elicited testimony from numerous witnesses that lightbulbs generally get "hot," there was no testimony as to whether it was clear that anybody knew how hot the bulbs would get or that the lightbulbs could get hot enough to start a fire. Further, although Calberone stated that he thought it was the driver's responsibility not to pack objects close to the lightbulbs, Hansen testified that he believed appellant's installation of the lighting system was negligent in that they did not install safety guards over the lightbulbs.
In addition, Hout testified that he did not notice any heat emanating from the lightbulbs as he packed the trailer, did not smell smoke at any time, and did not think that the lightbulbs would start a fire. Hout also testified that he was a careful packer and had never had any accident or caused major damage to contents. Mrs. Miller also testified that the packers were careful and she worked with them in packing the trailer. She noticed nothing strange about the lights or how the items were packed. The trial court found Hout's testimony to be the most credible of any witness and that he was careful in his loading of the trailer. After reviewing the testimony of the witnesses, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find that the trial court's judgment was supported by some competent, credible evidence on this issue. Appellant's third and tenth assignments of error are overruled.
Appellees have filed two assignments of error in their consolidated appeal. Appellees argue in its assignments of error that the trial court erred in denying prejudgment interest pursuant to R.C. 1343.03(A) and (C). Because we have remanded the issue of damages, with regard to the fair market value of the property loss sustained by the Millers, these assignments of error are both rendered moot.
Accordingly, appellant's first and second assignments of error are overruled in part and sustained in part; its third, fifth, sixth, seventh, ninth, and tenth assignments of error are overruled; its fourth assignment of error is moot; and its eighth assignment of error is sustained. Appellees' two assignments of error are moot. Therefore, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part. The trial court shall hold a damages only hearing and determine, where feasibly ascertainable, the fair market value of the Miller's destroyed property. The trial court shall also again determine whether prejudgment interest should be awarded on the new damages amount.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.